Gardner *v.* Clark.

GARDNER and others *vs.* CLARK.

The provision of the code allowing a party to be examined as a witness in his own behalf, whenever the assignor of a thing in action or contract has been introduced as a witness, by the adverse party, ought not to be restricted to the case of a voluntary assignor. It applies also, in cases where the assignment is made in pursuance of law, or by the direction of a court or officer.

A debtor, proceeded against under the non-imprisonment act, who chooses to deliver an inventory of his estate and execute an assignment of his property under the 3d subdivision of the 10th section of that act, is a voluntary actor, and the assignment cannot be deemed a compulsory act.

Where a party to a suit is examined as a witness in his own behalf, the code does not limit his examination to *the same identical points* as to which the assignor has been inquired of; but he may offer himself as a witness "*to the same matter*."

A request to a judge to instruct the jury in a particular manner, must rest upon undisputed facts, or a hypothetical case. If the proposition submitted is incorrect, either in fact or in law, the judge may refuse to give the instruction.

As a general rule, the construction of a contract is a matter to be determined by the court, and not by the jury. But this is to be taken with the qualification that the entire contract is in writing, needing nothing but an interpretation of its language, by its own intrinsic light; or, that, being by parol, there is no contrariety or antagonism in the evidence by which the contract is sought to be established.

Although it is generally the province of the court to construe contracts, yet when the meaning is to be judged of by facts *aliunde*, in connection with the written language, very much must be left to the jury.

A new trial will not be granted, for the misdirection of the judge, in his charge, where the party has sustained no injury by such misdirection.

THIS was an appeal by the plaintiffs from a judgment entered at a special term. The action was brought to recover

Gardner *v.* Clark.

damages for the non-delivery of grain upon a written contract executed by one Adison Gardner and the defendant, on the 25th of May, 1846, which was subsequently modified by a parol agreement between those parties. The written contract was as follows: "Article of agreement made and entered into this twenty-fifth day of May, 1846, by and between Perkins Clark and Adison Gardner, of Lenox, Madison county, as follows: Said Clark sells to said Gardner and his representatives, all the oats he shall raise on seventy acres of land, at thirty-one cents per bushel. So much of said oats as said Clark shall raise in Oneida county to be delivered at Durhamville, and the residue at the nearest point on the Erie canal to where they shall be raised; one half of the oats to be delivered in the month of August next—the residue by the fifteenth day of September next; all the oats to be weighed, and one bushel in each load measured and weighed to average the load. Said Gardner to pay as above when delivered as above; the said oats to be well cleaned, and fit for market. PERKINS CLARK. [L. S.]
ADISON GARDNER. [L. S.]"

The complaint alleged that, pursuant to said contract, the defendant, at sundry times, delivered to Gardner two thousand and forty-eight bushels of oats, and received payment therefor, according to the terms of the contract; but before the time had gone by for wholly performing said contract, and after all of the above mentioned 2048 bushels of oats had been delivered, except 192 bushels thereof, viz. on or about the ninth day of September, 1846, the defendant stated and alleged to Gardner that he, the defendant, had then and thereafter to deliver upon said contract, about as many more oats as he had already delivered thereon; whereupon the parties mutually agreed to modify the said contract as follows, to wit: That the defendant should sell and deliver to Gardner one thousand bushels of barley, to be delivered by said defendant to said Gardner, at the storehouse of William F. Dunham, in Canastota, as soon as he, the defendant, should get his crop of barley threshed in the fall of said year, 1846, and that he, the defendant, would sell and deliver to the said Gardner two thousand bushels of oats, to be

delivered to Gardner by said defendant, in like manner and at the same times and places in the year 1847, as was specified for the delivery of the oats in said contract in writing, for which said barley Gardner was to pay the defendant forty-four cents a bushel, and for said oats twenty-five cents a bushel, on delivery of said oats and barley respectively, except forty dollars towards the purchase money for said last mentioned oats and barley, which said forty dollars Gardner agreed to, and did, pay said defendant down as part of the purchase money for said oats and barley; and thereupon the defendant and Gardner further agreed that said contract, as so verbally modified, should stand in place of the said written contract, and that no more oats should be delivered pursuant to said written contract, except what oats the defendant then had ready for delivery at a certain barn of said defendant, in Lenox, amounting to 192 bushels, and which said 192 bushels made up the balance of 2048 bushels delivered in all, upon said written contract, and which oats then at said barn, being 192 bushels of oats, Gardner agreed to pay said defendant for, at the price mentioned in said contract; that the defendant did afterwards, and on or about the fifteenth day of September, 1846, deliver said 192 bushels of oats to Gardner, pursuant to said written contract so modified, and Gardner paid the defendant therefor accordingly; that on the first day of October, 1846, the defendant did, pursuant to said modified contract, deliver to said Gardner three hundred and thirty-six bushels of barley, and Gardner did accordingly pay said defendant therefor; but the defendant, although he did get his crop of barley threshed, and did deliver part and parcel of said one thousand bushels of barley, and though the said Gardner was ready and willing to receive the residue of said one thousand bushels, and to pay for the same pursuant to said modified contract, yet the defendant wholly neglected and refused to sell and deliver to Gardner the residue of said one thousand bushels of barley, or any part thereof; but on the contrary, after the delivery of the said 336 bushels, and on or about the fifth day of October, 1846, did utterly refuse to deliver the residue of said barley to Gardner, pursuant to said modified contract. The

Gardner *v.* Clark.

complaint then averred a demand by Gardner, of the residue of the barley, and a refusal by the defendant, by means of which refusal Gardner had sustained great damage. The complaint further alleged that Gardner, on the first day of Oct. 1848, sold, assigned and transferred the said contract, and the said modified contract and his said damages against the defendant, to one Nathan F. Graves, according to law; and the said Nathan F. Graves did afterwards, and on or about the 12th day of April, 1849, sell and transfer the said contract, modified contract, and the said damages and right of action to the plaintiffs, according to law, and the plaintiffs, from the time last aforesaid, had been and still were the lawful holders and owners of the said contract and modified contract, and the damages recoverable against the said defendant, for the breaches of the same on the part of the defendant.

The defendant, in his answer, denied the contract in part, and alleged the non-performance by Gardner, of a condition precedent, in making payment for the grain. He also denied that Gardner demanded a delivery of the grain, or that the cause of action had been assigned to the plaintiff, and insisted that Gardner still owned the same. The cause was tried at the Madison circuit in April, 1853, before Justice Crippen. The material portions of the testimony given are referred to in the opinion of the court. Before his honor the judge charged the jury, the counsel for the plaintiffs submitted to the court the following propositions in writing, and requested the court to charge the jury in accordance therewith, and handed the said written propositions to the court, which are as follows:

1. That the defendant upon the contract, as proved by Gardner, was not entitled to any pay for the barley, until the whole which he contracted to sell to Gardner had been delivered. 2. That the defendant did not tender the residue of the barley to Gardner or Dunham. Taking the testimony of the witnesses on that subject as true, the transaction did not amount to a tender. 3. That the title to the whole barley in question remained in the defendant until he received payment for so much as had been delivered, when the title to the part delivered passed to

Gardner. 4. That the payment by Gardner for the barley actually delivered, was no waiver of his right to have the residue contracted for, delivered. 5. That inasmuch as the time for the delivery of the barley was not fixed by the contract, but was left open and indefinite, Gardner was entitled to a reasonable notice of the time when the defendant intended to complete the delivery of the barley, so as to be prepared for payment. 6. That if the jury believed that the defendant acted in bad faith in seizing upon the time when Gardner was temporarily absent for the purpose of making sale of his grain at Albany, to make demand of payment of the barley, then such demand of payment and refusal to pay by Dunham, was no breach of the contract on the part of Gardner. The court refused to charge the jury in accordance to the first proposition, but charged that the main question was, whether Gardner had complied with the contract on his part to be performed, and that. hence it became a material inquiry whether, according to the terms of the modi-fied or verbal contract for the delivery of barley in 1846, and of oats in 1847, the barley was to be paid for as each load was delivered, or whether it was not to be paid for until the delivery of the whole. That this question of construction of the con-tract was a question for the jury to decide, and the court there-upon submitted the said question upon the construction of the verbal or modified contract to the decision of the jury. To which refusal, and also that part of the charge by which the court submitted the construction of the verbal or modified contract to the decision of the jury, the counsel for the plaintiffs excepted. The court further refused to charge in accordance with the second proposition, but charged that if Gardner was required by the said contract to pay for each load of the barley when delivered, on demand of payment for what had been delivered, an offer to deliver the residue on the part of the defendant was sufficient, and that a tender of the residue was not necessary to exonerate the defendant from liability, if payment was refused when so demanded. To which refusal and charge the counsel for the plaintiffs excepted. The court further refused to charge in accordance with the third proposition, but charged that if by

Gardner *v.* Clark.

the contract the defendant was to receive pay on the delivery of each load of barley, then the title to each load remained in the defendant until paid for, unless the defendant consented to give a credit therefor; that if he did consent to give a credit, by not calling for payment when he delivered the barley, he could not afterwards claim a breach of the contract for non-payment of the amount so delivered. To which refusal the counsel for the plaintiffs excepted. The court further refused to charge in accordance with the fourth proposition, but charged the jury that if they should come to the conclusion, and should find, that each load of barley, by the terms of the contract, was to be paid for when such load was delivered, and that the defendant demanded payment of Dunham for the barley which he had previously delivered, and that such payment was not made when so demanded, then they must hold the contract broken on the part of Gardner; which breach would exonerate the defendant not only from any obligation to deliver the residue of the barley contracted for, but also from any obligation to deliver the oats contracted to be delivered in 1847. To which refusal and charge the counsel for the plaintiffs excepted. The court further refused to charge in accordance with the fifth proposition, but charged the jury that Gardner was bound by the contract at all times to be ready at the place specified for the delivery of the barley, to receive and to pay for the barley when delivered by the defendant; but that the defendant having delivered a part without requiring payment at the time, he could not put an end to the contract, without giving notice of an intent not to deliver further until payment or security therefor was given. To which refusal and charge the counsel for the plaintiffs excepted. The court further charged in accordance with the 6th proposition. Whereupon the cause was submitted to the jury, who rendered a verdict for the defendant.

*S. A. Goodwin,* for the plaintiffs. I. The court erred in allowing the defendant to be sworn as a witness. The assignment by Gardner to Graves was the result of a compulsory proceeding, under the act of 1831; the assignment being made in pursuance

of an order made by Judge Nye, and the assignee appointed by him. Before the code, such assignee could have brought this action in his own name, and the assignor would have been a competent witnesses. (2 *R. S.* 234, § 37.) It seems quite clear that the object and intention of the code was to provide, that in the class of cases where, by its provisions, assignments can be made and the action brought in the name of the assignee, and the assignor be sworn as a witness, the defendant in such cases may be called as a witness to the same points; and that its provisions do not in this respect apply to actions that could before be brought in the name of the assignee, the assignor being a competent witness without the aid of the code. It is not within the policy of the code to allow the defendant to be sworn in cases like the present. (*See Code,* § 398, 9, 111.) II. The justice erred in allowing the defendant to be examined in his own behalf as to matters in regard to which the assignor had not been examined. Gardner had not been examined as to any conversation between the defendant and Dunham, nor as to the defendant's having the grain in readiness to deliver. The defendant can only be called as to the *same matter—the same points*—on which the assignor is examined. (*Code,* § 399.) III. The court erred in refusing to charge the jury in accordance with the plaintiffs' first proposition, and in submitting the question of the *construction of the contract* to the jury. Taking the contract as proved by Gardner, the defendant was not entitled to any pay for the barley, until the whole which he had contracted to sell had been delivered. (19 *John.* 340. 13 *Id.* 53. 2 *Mass. R.* 147. 18 *Wend.* 187. 8 *Cow.* 457.) By this refusal to charge, the court left it to the jury to construe the contract as proved by Gardner, and to say that by its terms each load was to be paid for as delivered. This was error. The question as to the construction of the contract was a matter to be determined by the court, and not by the jury. By this charge it is not left to the jury to find whether the contract was made as sworn to by Gardner or by the defendant. But the construction to be given to the contract—its legal effect and meaning—is to be (by this charge) decided by the jury. Under this charge,

if the jury believe that the terms of the contract were as sworn to by Gardner, yet they are to determine the construction and effect of the contract as proved, thus making the jury take the place of the court. (1 *U. S. Dig.* 630, § 66. 10 *Mass. R.* 384. 3 *Binn.* 337. 3 *Cranch*, 180. *Gra. on New Trials*, 288.) IV. The court erred in the refusal and charge as to the plaintiffs' second proposition. The court should have charged as requested; for if the jury believed the terms of the contract to have been as proved by Gardner, a tender of the balance of the grain would have been necessary to release the defendant from the contract ; and taking the evidence as to this transaction as true, it did not amount to a tender or offer of performance and refusal, on the part of Gardner, that would do away with the obligation of the contract. And again, if the defendant had consented to give a credit for a part of the grain delivered, he could not afterwards avoid the contract and refuse to deliver the balance, because that on which he had given a credit had not as yet been paid for. V. The court erred in refusing to charge as requested in the plaintiffs' third proposition. The title to the whole barley remained in the defendant until he received pay for so much as had been delivered, when the title to the part delivered passed to Gardner ; and as the title did not pass until the money was paid, and the defendant received the money and passed the barley to Gardner, he thus ratified the contract, and was liable to deliver the residue of the barley. VI. The court erred in the refusal and charge as to the plaintiffs' fourth proposition. It is very clear that Gardner, by paying the defendant for the barley actually delivered, did not waive his right to have the residue contracted for, delivered. This payment could not operate so as to release the defendant from the contract. So if the defendant had delivered barley and not called for or taken the money for it, but chose, notwithstanding the contract, to give Gardner a credit for the same, he could not afterwards put an end to the contract, by calling upon Gardner to pay for the barley previously delivered; and, on his not doing so, refuse to deliver the balance; for by giving the credit he has waived the effect of non-payment, so far as it

would go to exonerate him from the contract. It makes it a debt against Gardner, but it can have no further influence upon the contract. VII. The court erred in the refusal and charge as to the plaintiffs' fifth proposition. The court should have charged as requested; the defendant having delivered a part of the barley without requiring payment at the time. After thus throwing Gardner off his guard, and in effect, waiving this condition of the contract, he cannot put an end to the contract by seizing upon a time when Gardner is temporarily absent and demand pay for the barley thus delivered, and put an end to the contract. After having misled the other party by his own acts, the defendant should give him a reasonable notice, to enable him to be present or to make arrangements to pay for the grain.

*F. Kernan,* for the defendant. A new trial should be denied, for the following reasons: I. The defendant, Perkins Clark, was properly admitted as a witness, and the objections of the plaintiffs to his examination were not well taken. (*Code,* § 399.) It cannot be denied but the action was brought to recover for a claim assigned by Adison Gardner to Nathan F. Graves, and by Graves to the plaintiffs. Gardner, therefore, was the "assignee of a thing in action or contract," and was examined on behalf of persons deriving title through or from him. This entitled the defendant to introduce himself to be examined. (*Code,* § 399.) Gardner is no less an *assignee* for having been compelled to become one. II. It was abundantly proved that the agreement relied upon by the plaintiffs had been broken by Gardner, and the defendant was exonerated from all further liability. (*Crandall* v. *Clark,* 7 *Barb.* 169. *Cornwall* v. *Haight,* 8 *Id.* 327.) III. The charge of the court was correct. The contract as modified, was partly in writing and partly in parol, and in such a case it is for the jury to construe it. (2 *Cow. & Hill,* 1420, *and cases there cited.*) The plaintiffs contend the grain was not to be paid for until all was delivered, and the defendant contends in his answer, and swears in his testimony, it was to be paid for *as fast as delivered.* As this rests in the parol proof, it was for the jury to determine. IV. The whole case rested in

Gardner *v.* Clark.

matters of fact, upon which the jury have passed in favor of the defendant, and their verdict should be considered final.

*By the Court*, BACON, J. The action was brought by the plaintiffs to recover damages alleged to have been sustained by the non-delivery of grain, upon a contract entered into in May, 1846, and subsequently modified by parol, as alleged, between Adison Gardner and the defendant. The grain was to be delivered in the fall of 1846 and 1847. The cause of action was assigned by Adison Gardner to Nathan F. Graves, by order of Judge Nye, in the course of a proceeding instituted against him under the non-imprisonment act of 1831. Graves subsequently sold and assigned the demand in question to the plaintiffs in this suit. The answer denies the contract, in part, and sets up the non-performance of a condition precedent on the part of Gardner, to wit, a refusal to pay for the grain as delivered, by which it is claimed the defendant was discharged from its obligation. There are other denials and issues tendered and taken between the parties, but it is not material to consider them in disposing of the case as now presented to the court.

On the trial Adison Gardner was sworn as a witness on the part of the plaintiffs, and examined at great length in regard to the contract and the alleged modification thereof; the non-performance thereof by the defendant; the amount of grain delivered; when and where the delivery was to be made; the payments made to the defendant; and generally upon about all that the plaintiffs were required to prove to make out their case. On the part of the defendant, after the testimony of one witness had been given, the defendant offered himself as a witness, and the plaintiffs objected to his being sworn, on the ground that as the assignment by Gardner to Graves was the result of a compulsory proceeding against Gardner, the code did not allow the defendant to offer himself as a witness in such a case. The code provides (§ 399) that when an assignee of a thing in action or contract is examined as a witness, on behalf of any person deriving title through or from him, the adverse party may offer himself as a

witness to the same matter, on his own behalf, and shall be so received. The answer to the plaintiff's objection is twofold.

(1.) The provision of the code is general, allowing the party to be examined whenever the assignor has been introduced and has given testimony for the adverse party. We can perceive no reason for restricting it to the case of a voluntary assignor. The object of the code was to allow the largest latitude to the introduction of evidence, and to permit opposing parties to be confronted with each other in order that the jury may have the benefit of all that can be said by parties cognizant of the transaction; leaving it to them to weigh, reconcile or discredit the testimony in their discretion. An involuntary assignor is as much an assignor, as one who of his own motion qualifies himself to be a witness by making a voluntary assignment. But,

(2.) We do not think Gardner was an involuntary assignor. He was proceeded against under the non-imprisonment act, but when brought before the officer who granted the order for his arrest, he was under no necessity of making the assignment. He had some four or five alternatives presented to him to avoid a commitment under the provisions of that act, either of which he was at liberty to embrace. He chose to deliver an inventory of his estate and execute an assignment of his property under the 3d subdivision of the 10th section of the act. This he was at liberty to do or to decline, and pursue some one or other of the different modes presented for his choice. In this he was a voluntary actor, and the assignment can in no just sense, therefore, be deemed a compulsory act. The objection was properly overruled, and the defendant sworn as a witness in the cause.

In a subsequent stage of his testimony, the defendant was inquired of as to an interview had by him with Dunham on the subject of the delivery and payment for the grain, and his readiness to deliver the balance. This testimony was objected to by the plaintiffs' counsel, on the ground that it did not call for testimony *upon the same matter* as to which Gardner had been examined. Now it is true that Gardner had not been examined as to the particulars of any interview of the defendant with Dunham, for Gardner was not present at any such interview. But

Gardner *v.* Clark.

he had testified that Dunham's storehouse was the place where the grain was to be delivered, and that Dunham was his agent to receive and pay for the same, he having supplied him with funds for that purpose; and these were very material inquiries to determine the defendant's liability, or his exemption from further obligation on his contract. The code does not limit the defendant's examination to the same *identical points* as to which the assignor had been inquired of, but he may offer himself as a witness " to the same matter." Suppose, for illustration, that an assignor had sworn that on a certain occasion he advanced a large sum of money to a defendant, for which he was bound to account, and the inquiry had there stopped. Can it be doubted that a defendant could be called to testify that at a subsequent period he had repaid that money to the assignor, or had expended it in some mode authorized by and for the benefit of the assignor? By the testimony of the assignor he was charged with a liability, which by showing another state of facts not called out, nor alluded to on the examination of the assignor, he was enabled to discharge. This may not be an examination on the same point to which the testimony of the assignor had been restricted, but it surely is *to the same matter*, and is fully authorized by this provision of the code. The ruling of the judge, therefore, in admitting this testimony, was correct, and the objection was properly overruled.

After the testimony on both sides was closed, the counsel for the plaintiffs submitted to the court several propositions in writing, in accordance with which he requested the judge to charge the jury. These propositions, being six in number, are set forth in the case, as well as the several refusals of the respective charges given thereupon by the court. In respect to the sixth proposition, the court did charge as the plaintiffs' counsel requested. In respect to four of them, but little serious complaint was made by the counsel, on the argument. We have examined the several refusals and the charges of the judge in regard to the 2d, 3d, 4th and 5th propositions propounded by the plaintiffs' counsel, and we think they are all warranted by the case as it appeared in evidence; that each and all of them

were quite as favorable to the plaintiffs as they had a right to ask; and that no injustice was done by these several rulings.

In respect to the first proposition, the refusal of the Judge to charge in accordance therewith, and the charge actually given by him, a more serious question arises. To understand the proposition, it must be borne in mind that the original contract between Gardner and the defendant was in writing, and is set forth in the complaint at fol. 304, precisely as it was afterwards proved on the trial. But this contract, it was claimed by the plaintiffs and not denied by the defendant, was subsequently modified by parol between Gardner and the defendant, although they greatly differed in their testimony as to the terms of the modification, and the great point of the case was to ascertain how far, if at all, that contract was modified on the subject of the right of the defendant to be paid for his barley as delivered. Upon this question, his liability under the contract, or his discharge from its obligations, turned. The plaintiffs' counsel asked the court to charge that " the defendant, upon the contract *as proved by Gardner,* was not entitled to any pay for the barley until the whole which he had contracted to sell had been delivered." Now the court was entirely right in refusing to charge in the language of this proposition, for the plain reason that the testimony of Gardner, standing alone, did not prove, nor conduce to prove, any such contract as was claimed. To arrive at any just conclusion on this point, it was absolutely necessary to go back to the original contract; and it was only by taking that, in connection with Gardner's testimony, that the court or the jury could come to any judgment as to what in this respect the real contract between the parties was. It is well settled that a request to the judge to instruct the jury must rest upon undisputed facts or a hypothetical case. If the proposition submitted is incorrect, either in fact or law, the judge may refuse to give the instruction. (5 *Denio,* 595. *See also Lyon* v. *Marshall,* 11 *Barb. S. C. Rep.* 241.)

The judge was right, therefore, in refusing to give the instruction requested; but the refusal was accompanied by a charge, that the main question in the case was, whether Gard

Gardner *v.* Clark.

ner had complied with the contract on his part, and hence it became material to inquire whether, according to the terms of the modified contract, the barley was to be paid for as each load was delivered, or whether it was not to be paid for until the delivery of the whole. That this question of the construction of the contract was a question for the jury to decide, and therefore the court submitted the question upon the construction of the modified contract to the decision of the jury. To all this the plaintiffs' counsel excepted, and insists that the submission of the question was entirely erroneous. As a general rule, the proposition of the plaintiffs' counsel, that the construction of a contract is a matter to be determined by the court, and not by the jury, will not be disputed. But this, nevertheless, is to be taken with the qualification that the entire contract is in writing, needing nothing but an interpretation of its language by its own intrinsic light, or that, being by parol, there is no contrariety or antagonism in the evidence by which the contract is sought to be established. Well settled as the rule we have alluded to is, we suppose it to be equally well established upon authority, that, although it is generally the province of the court to construe contracts, yet, when the meaning is to be judged of by facts *aliunde,* in connection with the written language, very much must be left to the jury. This proposition is stated in these precise terms in *Cowen & Hill's Notes to Phil. Evidence,* 4th *part, p.* 1420. In such cases, say the court, in 8 *Conn. R.* 127, the construction is usually matter of fact for the jury. And per Gibson, J. (1 *Penn. Rep.* 386,) " an admixture of parol with written evidence draws the whole to the jury." (*See also Etting* v. *Bank of U. S.,* 11 *Wheat.* 59.)

Such was emphatically the case here. Without the aid of the written contract the testimony of Gardner was unintelligible; and how far that was modified was the point to be gathered from the parol evidence. The language of the judge is doubtless liable to some criticism, and the proposition was not put forth quite as clearly, nor indeed as broadly, as it should have been; but it was substantially correct, and in accordance with a well settled legal principle. Indeed, it was more favorable to the

plaintiffs than they could justly have claimed. The testimony of Gardner was directly contradicted by that of the defendant, on the subject of the modified contract, and if the judge had left it to the jury *upon the whole evidence*, as he fairly might have done, the result arrived at by the jury would, in all probability, have been more speedily and certainly attained. It seems to us very clear, that even if the jury were, by the language of this charge, somewhat misdirected, the plaintiffs have sustained no injury by such misdirection; and, in such case, a new trial will be denied. (*Mansfield* v. *Wheeler*, 23 *Wend.* 79.)

We are satisfied that the ends of justice have been substantially attained in this case, and a new trial is accordingly denied.

[OSWEGO GENERAL TERM, April 2, 1854. *Hubbard*, *Pratt* and *Bacon*, Justices.]