The First National Bank of Springfield, Illinois, Respondent, *v.* Charles A. Dana, Appellant.

While it is the province of the courts to construe contracts, yet where the meaning of a contract is obscure and depends upon facts *aliunde*, in connection with the written language, the question of construction may be one of fact for the jury.

In the absence of any motion or act, on the part of a defendant, upon the trial of an action from which an assent to a decision of the case by the court, and a waiver of the right to go to the jury may be implied, an exception to a direction of a verdict for plaintiff is sufficient to present the point on appeal that there were questions of fact for the jury; it is not necessary to request the submission of any such fact.

Defendant was the editor of a newspaper owned by a corporation, a portion of the stock of which he held. W., who was plaintiff's president, owning a majority of its stock, was also a stockholder in said corporation. Defendant was advised by the publisher of the paper, who had been to see W. and other stockholders, that they had concluded to levy an assessment upon the stock, and that they had agreed to furnish the money for his share upon pledge of his stock. It was represented to defendant that W. had paid his subscription to the stock in full, that there was to be an additional assessment upon all the stock, and that W. was to pay his share. The note in suit was thereupon made, and delivered to the publisher. W. had not paid his assessment, nor had he paid in full for his stock. At a subsequent meeting of the stockholders of the newspaper company, it was agreed that defendant should withdraw from it and give up his stock, the stockholders agreeing to assume payment of the note; and defendant thereupon surrendered his

stock. Upon being advised that a claim was made against him, defendant wrote to plaintiff, stating the facts, and that if sued he would be obliged to sue the company and its stockholders. Plaintiff's cashier thereafter wrote defendant, proposing that if defendant would sue the newspaper company for the performance of the contract to pay the note, it would pay one-half the cost, adding that if the proposition suits it will avoid the necessity of a suit upon the note. An agreement was entered into upon the basis of this letter. Defendant brought an action against said company, obtained judgment, and upon return of execution unsatisfied brought suit against the stockholders, which was pending when this action was commenced. The court directed a verdict for plaintiff; *held,* error; that if the letter of plaintiff's cashier stood alone, it was a question whether the contract was not satisfied by bringing the action and obtaining the judgment against the company; if all the letters were to be considered it was not clear that a suit against the stockholders was not a part of the arrangement; and that this was a question for the jury.

(Argued November 18, 1879; decided December 2, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict, and also affirming an order denying a motion to set aside the verdict and for a new trial.

This action was brought upon a promissory note made by the defendant, payable to the order of the plaintiff.

The answer admitted the making of the note, and set up by way of defense : That the defendant deposited with the plaintiff, as collateral security for the payment of the note, $10,000 in stock certificates of the Chicago Republican Company, which collaterals were worth more than the amount of the note ; that about May, 1866, the Chicago Republican Company agreed with the defendant, that it would pay this note, in consideration, among other things, of the transfer to that company by the defendant of all his interest in the aforesaid collaterals ; that in or about 1870, the plaintiff, with knowledge of the aforesaid agreement, promised and agreed with the defendant that it would not sue him upon this promissory note, if he would sue the Chicago Republican Company thereon, for the plaintiff's benefit, and would institute legal proceedings against the

individual stockholders of that company, if the same should prove necessary ; and it was agreed that the plaintiff and defendant should pay one-half the expenses of the suits and legal proceedings thus contemplated ; that pursuant to this last agreement, the defendant sued the Chicago Republican Company, and recovered judgment, which, however, could not be directly enforced, by reason of the dissolution of that corporation ; he then sued the individual stockholders, in an action which is still pending ; and he has paid all the expenses of these legal proceedings and fully performed the agreement on his part.

Plaintiff replied, admitting, " that in the month of July, 1869, the plaintiff being then the holder of the note for which this action is brought, did agree with the defendant, that in case he would in his own name bring action to enforce the payment of said note against the Chicago Republican Company, under an agreement given to said Dana by the said Chicago Republican Company to pay said note, or the amount thereof, that they would not proceed against him until judgment was recovered in said action, and would pay one-half of the costs of said suit when due, and that said suit was brought against said Chicago Republican Company, by said Dana, and that on the 9th day of January, 1871, and before the commencement of this action, a decree or judgment was entered therein in favor of said Dana against the Chicago Republican Company."

The facts appearing on trial are set forth sufficiently in the opinion.

*Willard Bartlett*, for appellant. The refusal of a trial court to direct a verdict or to nonsuit is not error, where although the evidence be uncontradictory, conflicting inferences may be drawn therefrom ; or where conflicting constructions or meanings may be fairly given to the language employed. (*Smith, Exrx.* v. *Coe*, 55 N. Y., 678; *Thurber* v. *Harlem, etc., Co.*, 60 id., 326; *Heyne* v. *Blair*, 62 id., 19; *Luke* v. *Calhoun*, 52 Ala., 115; *Railroad Co.* v. *Stout*,

17 Wall., 657.) If the intention of the parties to a verbal contract is doubtful, although there may be no conflict in the evidence, the jury must be allowed to determine what the contract .was. (*Swauner* v. *Swauner*, 50 Ala., 66; *Dolfinger* v. *Fishback*, 12 Bush. [Ky.], 474.) Questions as to the meaning of particular words used in a special sense in a written instrument are for the jury. It is not true that no question of construction can be submitted to a jury. (*Pitney* v. *Glens Falls Ins. Co.*, 65 N. Y., 17; *Marshall* v. *Dodson*, 1 Heisk., 95; *Etting* v. *Bk. of U. S.*, 11 Wheat., 59.) When the meaning of a contract is to be judged of, not alone by the intrinsic light of the writing, but by facts *aliunde* in connection with the written language, the case ought to be left to the jury upon the whole evidence. (*Gardner* v. *Clark*, 17 Barb., 538; *Gauson* v. *Madigan*, 15 Wis., 144; *School Dist.* v. *Lynch*, 34 Conn., 333; 1 Penn., 386.) The defendant can avail himself of the error of withdrawing the case from the jury and directing a verdict, without having himself requested the court to submit the questions of fact to the jury. (*Stone* v. *Flower*, 47 N. Y., 566; *Clemence* v. *City of Auburn*, 66 id., 334; *Trustees Easthampton* v. *Kirk*, 68 id., 459.) Plaintiff's cashier had sufficient authority to render it liable under the agreement with defendant. (*Brindenbecker* v. *Lowell*, 32 Barb., 17; *Olcott* v. *Tioga R. R. Co.*, 27 N. Y., 558; 12 Wheat., 64.)

*Chas. C. Emott*, for respondent. There was no question of fact, no issue to be submitted to the jury. (*Underhill* v. *Vandervoort*, 56 N. Y., 242; *Groat* v. *Gile*, 51 id., 441; *Bank* v. *Myles*, 73 id., 336, 341; *People* v. *Cook*, 8 id., 67–72; *Benson* v. *Southard*, 10 id., 236.) If there had been any possible question to submit to the jury, the defendant was bound to ask the court to have it submitted. (*Mallory* v. *Tioga R. R.*, 3 Abb. Ct. App. Dec., 139; *Dows* v. *Rush*, 38 Barb., 157–180; *Winchell* v. *Hicks*, 18 N. Y., 558, 565.)

MILLER, J. The judge upon the trial held that the plaintiff's reply to the defendant's answer admitted that they did

agree that, in case the defendant would sue in his own name the Chicago Republican Company to enforce the payment of the note, that the plaintiff would not proceed against him until judgment was recovered in that action ; that this should be taken as the limit of liability ; and that there would be no other forbearance created in the proposition contained in the letter of the plaintiff's cashier to the defendant, upon a fair construction of its language. The case was disposed of upon the construction to be placed upon this letter regarding it as an agreement between the parties. Several requests were made to charge the jury, which were refused and exceptions severally taken to each refusal, and the judge directed a verdict in favor of the plaintiff, to which ruling an exception was also taken.

The principal question which presents itself is whether the judge erred in the withdrawal of the case from the jury, and in thus directing a verdict. The solution of this question involves a consideration of the evidence presented upon the trial. While the facts were undisputed, there were circumstances connected with the transaction which properly should be taken into consideration in determining the inferences to be drawn from the acts of the parties themselves.

The defendant was the editor of the Chicago Republican newspaper, which was owned by a corporation in which he had received stock as an inducement to become such editor. According to the defendant's testimony, the paper was out of money, and the publisher, who was the general manager and who had charge of its finances, went to Springfield to see General Williams, who was plaintiff's president, and Mr. Bunn, who carried on a private bank of his own, and who were stockholders and had established the paper, returned and told the defendant that they had concluded to levy an assessment upon the stock, and wanted him to pay his share ; and that they agreed to furnish the money, with a pledge of the stock. It was also represented to and understood by the defendant that Williams had paid his subscription to the stock in full ; that there was to be an additional assessment

upon all the stock; and that both Williams and Bunn had agreed to and were to pay their assessment. The note in suit was made payable at the plaintiff's bank, because Williams, as defendant testifies, was the bank. According to his (Williams') own testimony, he owned a majority of the stock. It was under these circumstances and by reason of these representations, that the note in question and another were delivered to the publisher to be sent to Springfield to raise the money.

The proof shows that Williams had neither paid his assessment nor had he fully paid for his stock; and it is thus manifest, — if the defendant's version of the transaction is correct — that the notes were obtained from him under representations which were not true. It is also proved and not contradicted, that afterwards, at the time when the defendant's separation was agreed upon at a meeting of all the stockholders,—which, we may assume, included the plaintiff's president—that the defendant proposed to them that they should pay these notes, and, at the same time, pay him a large sum of money, and that the defendant should give them the stock, as a condition of his giving up the contract. They thereupon agreed to assume the payment of the two notes, and, in accordance with this arrangement, the stock was surrendered and the defendant was relieved from any obligation to pay such notes. He had a right to suppose — and there is evidence which sustains the theory — that he was then discharged from all obligation to pay the same, unless the note in question had been transferred to the plaintiff absolutely, without notice as to the facts, and it held the same as a *bona fide* holder, without any participation in the arrangement for its payment. In this respect there is no direct evidence. It does, however, appear that, upon the defendant's being advised that a claim was made against him for the same, a correspondence ensued, all or a portion of which was introduced in evidence upon the trial by the plaintiff, except the letter of the plaintiff's cashier, dated July 9, 1869. The first letter of the defendant, dated March 17, 1868, to the

plaintiff's cashier, gives a history of the notes substantially as already stated, and says the Republican Company have settled one of them, and that they are bound to settle the one held by the plaintiff. The answer to this is not given, and on the twenty-fourth of March following the defendant again writes, and says he does not want to be sued for nothing, and if he is, he has "no recourse but to sue the Republican Company and its individual stockholders," and refers to Mr. Williams, the plaintiff's president, as one of them, and offers to write to him or others, as advised. On the eighth of October following the defendant again writes, stating that he has written to Bunn, Williams and other prominent stockholders, that he should have to sue them if the plaintiff sued him, as they were individually liable. On the ninth of October the defendant also writes to Gen. Williams that he has been notified by the plaintiff of the intention to sue him on the note, and states that if he is sued he will be compelled to bring a suit in the United States Circuit Court against the company and its stockholders.

There can be no mistake as to the construction to be placed upon these letters, and as to the fact that at this time the plaintiff was fully advised of the circumstances under which the note in question was given, and of the fact that an arrangement had been made by which they were to be paid by the Republican Company, nor as to the proposal or suggestion of the defendant to sue the company and the stockholders, and to pursue this remedy.

In the absence of any proof that any further correspondence ensued until the 8th of July, 1869, it is at least questionable whether the letter of the plaintiff's cashier of that date should be regarded as a response to the last letter of the defendant. This letter states the inability of the plaintiff to get Mr. Bunn or the Republican Company to settle, and proposes to save expense, and that if the defendant will sue the Republican Company for the performance of the contract in paying the note, they will divide the expense of the suit with him, or rather that they will pay

one-half of the costs of the suit. It also states that if the proposition suits, it will avoid the necessity of commencing a suit upon the note which will be more satisfactory all around. If the letter of the plaintiff's cashier stood alone, a question would arise whether the contract was not satisfied by the bringing of the suit and obtaining a judgment against the Republican Company ; but if all the letters are to be taken into consideration, it is certainly not clear that a suit against the stockholders also was not a part of the arrangement. The defendant upon being informed of the claim, declined to pay and suggested a suit against the company and the stockholders. The cashier's letter, if it may be regarded as an answer, accepts the proposition to sue the company at least, without using language which expressly limits the suit to the company alone, or intimating in any manner that he refuses to accede to suing the stockholders. Such an answer might well be regarded, under some circumstances, as an acceptance of the entire suggestion to sue both the company and the stockholders. The object of the suit would be to collect the demand ; and as defendant had named the stockholders as persons to be sued, it is hardly to be assumed that such a purpose would be effectually accomplished by a suit against the company only. If the letters are to be taken together, there was a contract to delay for some time ; and it is not manifest that it was contemplated to stop with the company, when it was by no means certain that a judgment against it would be of any avail. The letter of the cashier, in view of the inferences to be drawn from all the facts, might, perhaps, be construed by a jury as an acceptance of the defendant's suggestion or proposal. Although the letter was written some time after the defendant's letters, the lapse of time after all left a question of fact for the jury to determine whether it was in response to the defendant's letters ; and it was for the jury to decide, under the circumstances, whether there was not an entire acceptance of the full proposition of the defendant to sue both the company and the stockholders.

While it is the province of the court to construe contracts, yet where the meaning is obscure and depends upon facts *aliunde* in connection with the written language, very much must be left to the jury. (Phil. on Ev. [Cow. & H's. notes], 1420; *Gardner* v. *Clark*, 17 Barb., 551; *Etting* v. *Bank of U. S.*, 11 Wheat., 59; *Jennings* v. *Sherwood*, 8 Conn., 122.) Within this rule the case should have been submitted to the jury by the judge; and it was error to direct a verdict for the plaintiff.

The plaintiff has no ground of complaint of the consequences resulting from the agreement if made, so long as it was entered into for a valid consideration and in reference to a claim which the defendant had reason to believe was actually paid. If the plaintiff did enter into a contract to allow the defendant to collect the debt of the parties who justly should pay it, no lawful reason exists why it is not obligatory.

It is claimed that the defendant was bound to ask the court to submit the question to the jury. We think that this was not necessary. The cases which hold that this is required are those where the party had, by motion for a non-suit, or by resting their defense upon certain propositions of law, or by requesting the court to direct a verdict, impliedly waived their right to go to the jury. (See *Winchell* v. *Hicks*, 18 N. Y., 558; *O'Neill* v. *James*, 43 id., 84.) This was not such a case, as no motion was made by the defendant's counsel which assented to a decision of the case by the judge, and several requests were made to charge the jury, which were refused. It was not treated at all by the defendant as involving a question of law merely, and comes directly within the rule laid down in *The Trustees, etc., of East Hampton* v. *Kirk* (68 N. Y., 459), that where the court directs a verdict, an exception to the ruling of the judge, in the absence of anything from which it may be implied that the right to go to the jury had been waived, is sufficient to present the objection upon appeal that there were questions of fact for the jury, and that it is not necessary to request that every fact

be so submitted. This case is decisive. No other points or suggestions are made in support of the judgment which demand comment; and the judgment and order must be reversed and a new trial granted, with costs to abide the event.

All concur, except ANDREWS and EARL, JJ., dissenting.
Judgment reversed.