NORTON v. SHIELDS.

(Circuit Court, S. D. New York. September 21, 1904.)

**1. CONTRACTS—ACTION FOR BREACH—RECOVERY FOR LOSS OF PROFITS.**

Where, in an action to recover for loss of profits on a contract which defendant refused to permit plaintiff to fully perform, the contract is established, and the cost of doing the work thereunder is found by the jury upon sufficient evidence, the fact that such cost would have been much less than the contract price is immaterial, and does not render a verdict for the difference objectionable as excessive.

**2. SAME—CONSTRUCTION—WHEN QUESTION FOR JURY.**

Where a contract for the laying of water pipe in a street required the contractor to make "all connections," and it was necessary to make connections between the new and the old pipe, involving the expense of having the water shut off in the latter while the connections were made, the question which party was required by the contract to bear such expense is one of mixed law and fact, depending upon the intent of the parties, and the interpretation of the contract in that regard is a matter for the determination of the jury, in the light of the circumstances and conduct of the parties.

At Law. On motion to set aside a verdict and for a new trial.

Donald McLean, for plaintiff.

L. L. Kellogg, for defendant.

HOLT, District Judge. This is a motion to set aside a verdict and for a new trial. The action was brought on an alleged contract by which the plaintiff agreed to lay certain pipes in the Boulevard, in New York City, between 125th street and 104th street.

It is claimed that the verdict was excessive. This point is based upon the amount allowed by the jury under the fourth cause of action, which was a claim for damages, consisting of the loss of profits caused by the defendant's refusal to permit the plaintiff to perform the work under the alleged contract, between 114th street and 104th street. The plaintiff claimed, and gave evidence to support the claim, that the contract price for the work was $6,695.50; that the cost of doing the work would have been $2,697.03; and that the profit, therefore, would have been the difference, or $3,998.47; and the jury rendered a verdict upon the fourth cause of action for that amount. The defendant's counsel claims that this verdict was excessive, and argues that it is incredible that any contract should have been made between these parties which would have given Norton a profit of 148 per cent. If a contract was made between the parties, the fact that the profits under it were large is immaterial. Whether the profits were large or small, both parties were bound by the contract. The only materiality of the fact that the profits were large is its bearing on the credibility of the plaintiff's testimony that the contract was made. But there is substantially no contradiction in the testimony as to those provisions of the contract which fixed the rate of profit. There was admittedly at the outset a specific contract

evidenced by Norton's letter to Shields of June 23, 1900, proposing upon certain terms to do the work from 125th street to 104th street, and the letter from Shields to Norton, dated July 18, 1900, accepting the proposition. Under this contract Norton did the work from 125th street to 119th street. A pause in the work of some five or six weeks then occurred, owing to the fact that pipe was not furnished along the trench to be laid. In October, additional pipe being ready, Shields began the work of continuing the laying of the pipe with a gang of his own men, claiming that the contract was at an end. Norton claimed that it was not. After some discussion between them, it was agreed that Norton should go on with the work, reducing his charge from $2.10 a lineal foot to $2. Norton claims that the agreement was that he was to complete the work to 104th street, and that the original agreement was simply modified by reducing the rate per lineal foot, and maintained in all other respects. Shields claims that an entirely new agreement was made to do the work to 114th street; that no contract was made as to the work below 114th street; and therefore that Norton was not entitled to recover at all for any loss of profits between 114th street and 104th street. But Shields himself admitted that the only reduction in the price to be paid for the work was from $2.10 to $2 per lineal foot. If, therefore, the new contract, or the modification of the original contract, did apply to the work to be done between 114th street and 104th street, there is nothing incredible in the idea that the parties entered into a contract giving such large profits, because the original contract, the execution of which is admitted, fixed a rate of profit which, under the modified or substituted contract, was only a trifle less; that is, a difference of ten cents a lineal foot. The substantial claim of Shields was that the new contract only covered the work to be done down to 114th street, but he did not claim that there was any change in the rate at which the work should be done, except the comparatively trivial change from $2.10 to $2 per lineal foot. The fact, therefore, that Norton would have made a large profit on the work below 114th street does not tend to show that no such contract as he claimed was made, for the contract which admittedly was made for the work from 119th street to 114th street provided for the same profit, and that from 125th street to 119th street for nearly as much.

The real difference between the parties as to the amount of the profits does not arise from any controversy as to the terms of the contract. If Norton had done the work between 114th street and 104th street under the contract as he claimed it to be, there is no doubt that the allowance of $6,695.50, which he claims would have been payable under it, is substantially correct. The real difference between the parties as to the amount of profit arises from the apparent discrepancy between the evidence offered by the plaintiff that the fair cost of the work from 114th street to 104th street was $2,697.03, and the evidence offered by the defendant that the cost of the work, as he performed it, amounted to $5,834.59. But adequate evidence was offered by the plaintiff in support of his claim as to what the cost of the work would have been. There were various grounds on which the plaintiff's counsel claimed that the defendant's figures of the cost of the work were too high, and of course the actual cost to Shields of doing the work was not conclusive.

He may have paid more than others would have paid. In short, the whole question was one for the jury.

The defendant also claims that the court erred in submitting to the jury the meaning of the provision in the contract that Norton should make all connections. It was necessary at certain stages of the work to make connection between the new pipe and the old pipe. By the terms of the contract Norton was to make the connections, but in order to make the connections it was necessary that the city authorities should cut off the water. To have this done involved some expense. A controversy arose between the parties as to who should pay such expense; Shields claiming that Norton's agreement to make the connections made it obligatory upon him to pay whatever was necessary to be paid as a preliminary to making the connections, and Norton claiming that he was simply obliged to make the connections when the pipes were in such a condition that the connections could be made. Shields paid $228.33 for the charges for shutting off the water, and claimed that Norton should reimburse him for that amount. I submitted to the jury the question of the meaning of the provision that Norton should make the connections on the theory that it was a mixed question of fact and law. The provision that Norton should make all connections, as used in the contract, is capable of either one of two meanings, and, in order to determine in what sense the parties used it, it seemed to me that it was necessary to consider the circumstances when the contract was made and the actual construction put upon the contract by the acts of the parties. The fact that Shields was to deliver the pipe alongside the trench, and that Norton was not under any obligation to do any work in laying the pipe until the pipe to be laid was ready at hand, and the fact that Shields applied to have the water shut off and paid to the city officials the charges for shutting it off, and made no claim on Norton for such payments until some time subsequently, were circumstances, in my opinion, which the jury had a right to take into consideration in determining the intention of the parties in the provision in the contract that Norton should make the connections. The general rule is undoubtedly that the construction of a written instrument is a question of law for the court to determine, but to that rule there are exceptions. When the language employed in a contract is not free from ambiguity, or when its interpretation depends upon the sense in which the words were used in view of the subject to which they relate, the relation of the parties and the surrounding circumstances properly applicable to it, the intent of the parties becomes a matter of enquiry, and the interpretation of the language used is a mixed question of law and of fact, to be determined by a jury. Kenyon v. K. T. & M. M. A. Ass'n., 122 N. Y. 254, 25 N. E. 299; Smith v. Coe, 55 N. Y. 678; White v. Hoyt, 73 N. Y. 512; First National Bank v. Dana, 79 N. Y. 116.

Under the circumstances, I cannot see that any adequate ground is shown for setting the verdict aside. The motion for a new trial is denied.