### McNALLY v. GEORGIA–FLORIDA LUMBER CO.

(Supreme Court, Appellate Division, Second Department.   October 20, 1911.)

1. CONTRACTS (§ 176*)—INTERPRETATION—QUESTION FOR COURT.
    A contract being complete and not ambiguous, its interpretation is a matter of law for the court.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 767–770; Dec. Dig. § 176.*]

2. CONTRACTS (§ 194*)—CONSTRUCTION—ADVANCEMENT OF MONEY.
    The contract of G. with M., reciting that M. has a contract to do work for Y., and providing that, at the times and in the amounts as the prog-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ress of the work shall require, G. shall advance such sums, not exceeding a certain amount, as shall be necessary and convenient to carry on and complete said contract, and shall pay when due the interest on the loans due by M., the proceeds of which were used on said contract, does not require G. to pay the principal, but only the interest, of loans M. had previously obtained of others for the work.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 194.*]

3. SUBROGATION (§ 26*)—PERSONS ENTITLED—VOLUNTEERS.

G., in taking up M.'s note, at its request, when under no obligation to M., or liability to the payee, was not a volunteer, so as to deprive it of right to be subrogated to the rights of the payee as to collateral.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 67; Dec. Dig. § 26.*]

4. APPEAL AND ERROR (§ 1071*)—REVIEW—INCONSISTENT FINDINGS—CONCLU-SIONS OF LAW.

The rule that inconsistent and irreconcilable findings, one of them being destructive of the judgment, require a reversal, does not apply to conclusions of law, so that, there having been proper findings of fact and conclusions of law, and judgment accordingly, reversal is not required because, at the request of the defeated party, an inconsistent conclusion of law, the obligation under a contract, the interpretation of which was one of law, was found; and this, though the request therefore was headed one for findings of fact.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. § 1071.*]

Appeal from Special Term, Westchester County.

Action by Thomas McNally against the Georgia-Florida Lumber Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before BURR, THOMAS, CARR, WOODWARD, and RICH, JJ.

Nathan P. Bushnell, for appellant.

Clifford Couch (Franklin Couch, on the brief), for respondent.

CARR, J. This appeal is by the plaintiff from a judgment entered upon a decision of the Special Term in Westchester county, in an action in replevin tried before the court without a jury. The action was brought originally against the Westchester County National Bank to recover certain shares of stock deposited by the plaintiff with the bank as collateral security for the payment of a note. The present defendant was substituted as a party defendant in the place of the bank, and the question tried out was as to the rights of the parties to hold the shares of stock in question.

The facts are practically undisputed, except in one feature. The plaintiff here was the president of a corporation known as the Thomas McNally Company. That corporation made and delivered to the bank its promissory note, dated April 21, 1908, in the sum of $5,000. This note was a collateral note, and recited the deposit with the bank as collateral security of the following stock: Ten shares of the German Savings Bank of Pittsburg; 105 shares of the Thomas McNally Company; 50 shares of the American Structural Steel Company. The plaintiff claims to own these shares of stock in his own right, and to

have deposited them as collateral security with the bank simply for the accommodation of the corporation which made the note. As to this claim there is no dispute. When the note came due, on May 21, 1908, the bank, at the request of Thomas McNally, and one Gill, who was the secretary and treasurer of the McNally Company, drew a draft upon the present defendant for the amount of the note, and forwarded with the draft 105 shares of stock of the Thomas McNally Company. The defendant honored the draft, and took the note and stock forwarded.

Here, however, comes the dispute as to the circumstances attending the acceptance of the draft. The defendant gave evidence that, when the draft was presented to it, it refused to accept it unless all the collateral described in the note was turned over to it. This evidence shows that some officer in the bank, who was communicated with by telephone, promised that, if the defendant would honor the draft at once, the rest of the stock mentioned in the note would be sent to it by mail on the following day. Some of the bank officers deny that any such conversation took place. The court, however, found the transaction as testified to by the defendant's witnesses. The bank, however, retained the shares of the German Savings Bank and the American Structural Steel Company, and both the plaintiff and the defendant made demand upon it for the delivery of these shares. The court found that the defendant honored the draft and took up the note at the request of the officers of the Thomas McNally Company, and that thereby it became subrogated to the rights of the bank as to all the collateral security mentioned in the note. The note was never paid by the Thomas McNally Company.

The plaintiff contends that the defendant was not entitled to subrogation, inasmuch as it owed a legal duty to pay the note in question when it became due by virtue of a certain contract in writing, made between the defendant and the Thomas McNally Company, bearing date April 25, 1908. This written contract recites first the existence of a contract between the city of New York and the Thomas McNally Company for the construction of a portion of the city's new aqueduct. Then follow recitals:

"Whereas, the said party of the first part [the Thomas McNally Company]. to fully and satisfactorily complete the said contract, requires to be advanced to it certain sums of money; and whereas, the party of the second part [the defendant] is to advance said sums to the amounts and at the times as will hereinafter appear."

The first clause of the instrument, which sets forth the mutual agreement of the parties, provides, in brief, that the McNally Company shall diligently prosecute the work, and that its president, Thomas McNally, shall devote his entire time and attention to the completion of the work. The second clause of the agreement is as follows:

"It is further understood and agreed that the party of the second part is to advance such sums as shall be necessary and convenient to carry on and complete said contract, not to exceed, however, the sum of two hundred thousand dollars ($200,000), said sum to be advanced at the times and in the amounts as the progress of the said work shall require."

The agreement further provided for the deposit with the defendant of all the capital stock of the McNally Company and for a complete control by the defendant of the affairs of the McNally Company, the method of estimating the expenditures made and to be made for the completion of the contract with the city of New York, and the adjustment of accounts and ultimate distribution of profits, should any result. It contained a clause as follows:

"Tenth. It is further understood and agreed that the interest on the loans due by said party of the first part, the proceeds of which were used upon said contract, shall be paid as the same become due and payable, and the same shall be a charge against said contract."

[1] The learned counsel for the appellant refers to the agreement of April 25, 1908, in his brief as follows:

"The contract was drawn with great definiteness, evidently by an able lawyer, and under no circumstances can it be deemed to be incomplete or ambiguous. The contract is thorough and complete in itself, and as it is this contract cannot be added to or supplemented by any other or parol undertaking, * * * but will be deemed to be conclusive, and to be entirely controlling upon the question of the rights of the parties between themselves."

Assuming the correctness of this contention, then the question of the interpretation of the meaning of its provisions became a question of law for the court. First National Bank v. Dana, 79 N. Y. 108; Dwight v. Germania Life Ins. Co., 103 N. Y. 341, 8 N. E. 654, 57 Am. Rep. 729; Brady v. Cassidy, 104 N. Y. 147, 10 N. E. 131; 9 Cyc. 591.

[2] The learned trial court found that this agreement of April 25, 1908, did not obligate the defendant to pay the note of the McNally Company which had been discounted on April 21, 1908. The language of the agreement as to moneys to be advanced was wholly prospective. The advances were to be made "at the times and in the amounts as the progress of the work shall require." It is evident that the parties had before them knowledge that the McNally Company had, before making this agreement, borrowed money on loans for the purpose of carrying on its contract with the city of New York. They dealt with this situation in precise language as follows:

"It is further understood and agreed that the interest on the loans due by said party of the first part, the proceeds of which were used upon said contract, shall be paid as the same become due and payable, and the same shall be a charge against said contract."

Here there is no inclusion of a duty to pay the principal amounts of the loans, but only the interest upon them. The interpretation which the appellant would seek to give to this agreement would require an entirely new phrasing, and the insertion of new provisions in a written agreement which is conceded to be complete in itself, conclusive, and without ambiguity. In declining so to construe this instrument, the learned trial court was clearly right.

[3] This brings us to a consideration of the further contention that the defendant, in taking up the note in question, acted as a pure volunteer, and is not entitled to subrogation to the rights of the payee

thereof. The court found on sufficient evidence that when the bank sent the draft to the defendant it did so at the request of both McNally himself and one Gill, the secretary and treasurer of the McNally Company. It also found that, when the defendant honored the draft, it did so at the request of the McNally Company, through its officers. Under these circumstances, we think that the act of the defendant in honoring the draft cannot be considered as that of a mere volunteer, who injected himself into transactions between other parties. Having been requested to take up this note, upon which it had no liability whatever to the payee, it would seem that equity would imply an agreement between the maker of the note and the defendant that the defendant should stand in the shoes of the payee of the note when it honored the draft made under the circumstances. The defendant had an interest to protect when it complied with the request of the McNally Company to take up the note. If the note became dishonored in the bank, and suit was brought and judgment obtained against the McNally Company, such judgment, if unpaid, might prove a serious obstacle in the way of a carrying out of the agreement of April 25th between the McNally Company and the defendant, in relation to the completion of the aqueduct contract with the city.

[4] There is some discussion in the brief of the appellant in regard to what are described as inconsistent findings of fact by the trial court. It seems to us that there is nothing of weight in this contention. The whole theory of the appellant is that the defendant was obligated to pay the note by virtue of the contract of April 21, 1908, with the McNally Company. At the request of the defendant, the court made a finding that it was not so obligated. The plaintiff requested the trial court to find that it was so obligated, and the court, in refusing to make the requested finding, used some very ambiguous language, which the plaintiff contends amounts to a finding that the defendant was so obligated under its contract with the McNally Company, and in this contention he asserts that the finding in favor of the defendant was inconsistent with the finding which he claims was made in his favor by the trial court. It is true that, where a trial court makes inconsistent and irreconcilable findings of fact, the appellant will be entitled to rely upon the finding most favorable to himself, and, where such finding is destructive of the judgment, the judgment must be reversed. City of Buffalo v. D., L. & W. R. R. Co., 190 N. Y. 84, 82 N. E. 513; Nickell v. Tracy, 184 N. Y. 386, 77 N. E. 391.

This rule applies, however, to findings of fact as distinguished from conclusions of law. As before pointed out, the question of the interpretation of the agreement of April 21, 1908, was purely one of law, and it did not become one of fact simply because the appellant in his requests to find so labeled it. Where the trial court has made proper finding of facts and proper conclusions of law, and awarded judgment accordingly, such judgment should not be reversed because at the request of the defeated party it has, through inadvertence or any other cause, found an inconsistent conclusion of law.

The judgment should be affirmed, with costs. All concur.