THE TRUSTEES OF THE FREEHOLDERS AND COMMONALTY OF THE TOWN OF EAST HAMPTON, Appellants, *v.* JOSIAH KIRK, Respondent.

Where, upon the trial of an action, the court directs a verdict for defendant, an exception to the ruling, in the absence of any thing from which it may be implied that the right to go to the jury has been waived, is sufficient to present the objection upon appeal, that there were questions of fact which should have been submitted to the jury; it is not necessary to request that any fact be so submitted.

*Winchell* v. *Hicks* (18 N. Y., 558), *O'Neill* v. *James* (43 N. Y., 84) distinguished.

The occasional use of lands, in the customary way, for a particular purpose, although uninterrupted for twenty years, will not alone be sufficient to sustain a right by adverse possession.

In an action of ejectment to recover a strip of land between high-water-mark of a bay, and the "cliff" or upland, plaintiffs proved title; defendant claimed by adverse possession. The land was not inclosed, cultivated or used for the ordinary purposes of husbandry, save for the gathering of seaweed for manure. Defendant, who owned the adjoining upland, and his predecessors in title so used it, and there was proof that other inhabitants of the town had gathered seaweed therefrom within twenty years, under a supposed right in the inhabitants of the town, without license or permission of the defendant or his predecessors; who, however, had asserted a right adverse to the rights of the inhabitants, and defendant, on one or two occasions, had demanded and received

a small royalty for seaweed gathered, those paying doing so under protest. A suit was brought by a former owner of defendant's land against one gathering seaweed, and the town, by resolution, resolved to defend and indemnify those of the inhabitants who should be sued. Defendant's deed and those of his predecessors, back to 1810, bounded the lands by "the beach or cliff." *Held*, that the gathering and storing of seaweed was not evidence of an occupation under a claim of title adverse to that of plaintiffs, and was not notice to them of a claim inconsistent with the rights of the other freeholders of the town; and that the evidence did not authorize a direction of a verdict for defendant.

It *seems* that a grant of land bounding it by or along a "beach" ordinarily and in the absence of any language in other clauses of the deed, or of any thing in the situation of the lands granted, or other circumstances authorizing a different interpretation, conveys title to high-water-mark.

*The Trustees, etc.,* v. *Kirk* (6 Hun, 257) reversed.

(Submitted February 6, 1877; decided February 13, 1877.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, in favor of defendant, entered upon an order affirming an order of Special Term denying a motion for a new trial and directing judgment on a verdict. (Reported below, 6 Hun, 257.)

This was an action of ejectment. The land in question was a narrow strip, lying along the sea front of defendant's farm, in the town of East Hampton, Suffolk county, and between high-water of the bay and the "cliff" or upland.

Plaintiff claimed title under what is known as "Dongan's patent," issued by Governor Dongan to plaintiffs in 1686, in trust for the use of the inhabitants of the town which included the *locus in quo*. Plaintiffs gave in evidence entries in the town records, showing allotments to certain inhabitants of the town lands, including defendant's farm; the lands allotted were bounded "westwardly by ye clift." Plaintiff, also, gave evidence tending to show that the inhabitants of the town, not owning the adjoining upland and without license or authority from the owners, had been in the habit of gathering seaweed upon the premises and carting it away for manure, also, by the minutes kept in the book of the trustees, that the trustees of

the town, at various times, agreed to defend suits against such inhabitants for taking seaweed from the premises in question, and, also, agreeing to indemnify and defend any inhabitants who may cart seaweed therefrom.

Defendant claimed under, and gave in evidence as the foundation of his title, a deed to Jonathan B. Mulford, executed in 1810, which bounded the land "by the clift or beach," and through various mesne conveyance in which the boundary was similar, the word for "cliff" being in some "clift," in others "cleft." Whether at the time of the allotments or prior to 1810, there was any space between the "cliff" or upland and high-water-mark did not appear. It appeared that said Mulford entered into possession of the premises conveyed to him, and that he and his successors in title occupied since that time. The premises in dispute were not inclosed or cultivated, and were only used by Mulford and those succeeding him for the purpose of gathering and storing seaweed. One Rogers, a former owner, brought an action against an inhabitant of the town, for taking seaweed from the premises; some of the inhabitants paid to defendant, under protest, a small license fee or royalty for removing seaweed.

At the close of the evidence the court ruled that the deed to Mulford "carried the grantee entering under it into possession of the premises to high-water-mark," and directed a verdict for defendant; to which plaintiffs' counsel excepted.

Plaintiffs then offered to prove that after the conveyance in 1810, the people of the town occupied the beach by getting seaweed, without objection, up to the time of the conveyance to Rogers. Also that the word "beach" as used and understood in Suffolk county, included all sandy territory between the upland and high-water-mark.

Further facts appear in the opinion.

*George Miller* for the appellants.

*E. A. Carpenter* for the respondent. The word "beach" as used in the deed, meant the space between high and low-water-

marks. (Angel on Tide Waters, 67 ; Hale De Jure Maris, 12 ; *Cutts* v. *Hussey*, 3 Shep. [Me.], 237 ; *Pollard* v. *Files*, 2 How. [U. S.], 607 ; *Phillips* v. *Rhodes*, 7 Met., 322.) Adverse possession under a claim or assertion of right and with the knowledge and acquiescence of defendant must be shown. (*Flora* v. *Carbeau*, 38 N. Y., 116 ; *White* v. *Spencer*, 14 id., 249 ; *Vosburg* v. *Teator*, 32 id., 561.)

Allen, J. It must be assumed that the premises in controversy, parcel of a large tract included in the same grant, were granted to the trustees of the freeholders and commonalty of the town of East Hampton, by Governor Dongan, by patent issued in 1686, and that the grant was in trust and for the use of the inhabitants of the town mentioned. It is also to be assumed upon the evidence, and in the absence of proof of a change in the shore line, that by the allotment of lands by the trustees in 1736, to be held in severalty, including the premises now owned and occupied by the defendant, the strip of land which is the subject of this action between the cliff or upland, and the present shore line, was not allotted or conveyed, but, if then in the same condition as now, was retained by the trustees for the common use of the town. The defendant does not, therefore, make title to the disputed territory from the patentees or the original source of title, but is driven to rest for his defence upon title acquired by an adverse possession. He does not attempt to trace his title from the patentees or their immediate grantee, or the person to whom the lands now owned by him were allotted. He makes title by several intermediate conveyances from Jonathan R. Mulford, to whom one parcel of land and the only parcel that need be referred to was conveyed in 1810, by a description bounding it "north-easterly by the clift or beach." All the conveyances down to that to the defendant in 1861, have retained substantially the same north-westerly boundary upon " the clift or beach." Ordinarily in a grant of lands under the name of a " beach " or a boundary of lands upon or by, or along a " beach," the

word would be held synonymous with the shore or strand, and as having reference to and including only the lands washed by the sea, and between high-water-mark and low-water-mark. In the case of a boundary it would be necessary so to restrict the meaning of the word, in order to have a certain and definite limit to the lands granted. If held to mean the sandy land or flats between the upland and the shore, which is frequently formed by a change of the shore line, and is not unfrequently called a "beach," it would be quite too uncertain and indefinite to constitute a line bounding lands granted. In a grant of a "beach" and perhaps, when a "beach" is made the boundary of lands, other clauses of the deed, and the situation of the lands granted or other circumstances may authorize a different interpretation and effect may be given to the word as meaning flats, or the sandy land between the upland and the actual shore line. In *Storer* v. *Freeman* (6 Mass., 435), Chief Justice PARSONS, in interpreting a deed substituted the word "flats" for "shore" in the description to give effect to the intent of the parties, and held that the land conveyed extended to the "flats," but did not include any part of them. The reasons given by the chief justice in the case quoted for restricting "shore" or "sea shore" to the ground between ordinary high-water-mark and low-water-mark are equally applicable to a boundary upon, or by, or along a beach. He says: "It cannot be considered as including any ground always covered by the sea; for then it would have no definite limit on the sea-board. Neither can it include any part of the land for the same reason." The definition of the shore is an accurate definition of a beach having respect to the nature and situation of both. Both words denote lands washed by the sea. (*Littlefield* v. *Littlefield*, 28 Maine R., 180; *Phillips* v. *Rhodes*, 7. Met., 322; *Cutts* v. *Hussey*, 15 Maine R., 237.) There is no evidence showing the shore line as it existed either at the time of the allotment in 1736, or the conveyance to Mulford in 1810. It is possible that at the latter date high-water-mark was at what is called the clift or cliff, and if so there would

be no doubt that the grant extended to the shore or beach, and if by the action of the sea, the shore is now at a distance from the cliff, the boundaries of the defendant's land as derived from Mulford, would vary with the changes in the shore, and he would be bounded by the beach or shore as it now is. If the clift and beach at the time of the allotment were the same, making the same line, that is, if high-water-mark was at the clift then, the defendant has a title to the premises in dispute by direct succession from the patentees, for it is not disputed that the allotments were of the lands to the clift. But this is not proved and we cannot assume that the shore or beach has at any time been other than as it now is. It follows that in the absence of evidence of this fact the defendant can only make title by adverse possession under a claim of title through Mulford.

The judge at Circuit directed a verdict for the defendant to which the plaintiffs excepted. It is now claimed that not having requested any fact to be submitted to the jury the objection cannot now be taken by the plaintiffs, that there were questions of fact which should have been so submitted. But the exception of the plaintiffs to the ruling and direction of the judge, is sufficient to present the question, and if it was error to take the case from the jury the objection is available under this general exception, and a particular request to the judge to reconsider and reverse his decision and send the case to the jury, was not necessary. The cases referred to by the counsel for the defendant, in which a party was held to have lost the benefit of the objection by an omission to request a submission of the evidence to the jury, are not in conflict with this position. In those cases the parties had by a motion for a nonsuit, or by resting their defence upon certain propositions of law impliedly waived their right to go to the jury, and not having requested to go to the jury after the nonsuit was denied, or the law held adversely to them, they were held estopped from taking the point in the appellate court, that there were questions of fact to be passed upon by the jury. The reasons of the rule as adopted and applied, fully appear

in the reports of the cases, and they are distinguishable from the case in hand. ( *Winchell* v. *Hicks*, 18 N. Y., 558; *O'Neill* v. *James*, 43 id., 84.)

If the determination of the question of adverse possession depended upon conflicting evidence, or inferences of fact to be drawn from the proof, it was the province of the jury to determine it, and it was error to take the case from the consideration of the jury by ordering a verdict for the defendant. The counsel for the defendant appears to assume that the possession and right as claimed by the defendant can only be disturbed by proof of adverse possession by the plaintiffs or those claiming under their title. But the plaintiffs having made a *prima facie* case by proof of title in them, it is for the defendant to show by affirmative evidence a better title, and for that he must rely upon an adverse possession in himself and those to whose title and possession he has succeeded, for the period of twenty years. To make title by adverse possession the possession must be continued under a claim of title adverse to the true owner for at least twenty years. The occasional use of lands in the customary way for a particular purpose, although uninterrupted for the prescribed period, will not alone be sufficient to sustain a right by adverse possession. The use and possession must be under a claim of title. ( *White* v. *Spencer*, 14 N. Y., 247; *Colvin* v. *Burnet*, 17 Wend., 564; *Miller* v. *Downing*, 54 N. Y., 631; Code, § 83.) The mere use by the defendant of the *locus in quo* for the gathering and storing of sea manure was not evidence of an occupation under a claim of title, and was not notice to the trustees or inhabitants of the town that any claim was made inconsistent with the equal rights of every other freeholder of the town, to use the premises in the same manner. As a freeholder of the town and as the owner of the adjoining upland he would have had the right to collect and deposit seaweed upon the shore for removal at a proper time, and the use of the lands for that purpose was not adverse to the title of the plaintiffs, and until knowledge was brought home to them that the acts

were performed under a claim of title and of a right to the exclusive possession of the premises it would not support a claim to an adverse possession. The lands were not inclosed or cultivated, or used for any of the ordinary purposes of husbandry other than the gathering of the seaweed for manure; and they were not susceptible of cultivation or use except for the purposes mentioned. There was proof that other inhabitants of the town had carted seaweed from the shore within twenty years before the commencement of the action, and as late as 1860, if not to a later period, and that the right was exercised not by the license and permission of the defendant or his predecessors, but under a supposed right in the commoners of the town. There was also evidence that the defendant and a former owner of the defendant's lands had asserted a right adverse to the rights in common of the inhabitants of the town, and that the defendant had, on one or two occasions after he became the owner in 1861, demanded and received a small royalty for seaweed gathered on the shore, those paying, doing so under protest. There was also evidence that a dispute arose in respect of the right while Mr. Rogers was the owner of the lands now owned by the defendant, and that the town resolved to defend and indemnify those of the inhabitants who should be sued for taking seaweed, and a suit was brought and tried in October, 1855. This was the substance of the evidence to establish an adverse possession, and while there may have been sufficient to carry the case to the jury, it did not authorize a direction of a verdict for the defendant. A claim made in 1855, resisted by the town and its inhabitants, resulting in an action by the claimant through whom defendant takes title, with evidence that the inhabitants of the town have continued to exercise the right claimed in their behalf, and that the defendant and his predecessors have not had the exclusive privilege or easement of gathering manure upon the premises, made it a question of fact for the jury, whether there had been any exclusive possession, or any continued possession adverse to the

plaintiffs for the time necessary, and under circumstances which would give a title by prescription.

The judgment must be reversed, and a new trial granted.

All concur.

Judgment reversed.