CLARA R. ATKINSON, RESPONDENT, *v.* JOHN A. BOWMAN, APPELLANT.

*Grant of lands by the crown — construction of it — the town of East Hampton took title under the grant from the crown.*

The tract of land which now constitutes the town of East Hampton was granted by the crown to the town and not to the persons called the "proprietors," who had bought the tract from the Indians, and a valid title to any land therein must be derived from the town and not from the said "proprietors."

APPEAL from a judgment in favor of the plaintiff, entered in Suffolk county upon the report of a referee.

The action was brought to recover the possession of a lot of upland in the town of East Hampton, Suffolk county. The plaintiff claimed title from the original proprietors, their heirs and assigns, and the defendant claimed title under a quit-claim deed from the trustees of the town of East Hampton.

The referee found that the native Indian proprietors of the tract of land, which is now the town of East Hampton, in the year 1648, by deed, conveyed to Theophilus Eaton and Edward Hopkins and their associates the said tract. In 1651, Eaton and Hopkins conveyed the said tract of land to thirty-nine individuals called proprietors. These proprietors obtained a confirmation of their purchase by a patent from Richard Nicholls, Esq., "Governor General under his Royal Highness, James, Duke of York," bearing date March 13, 1666, recorded in the records for the county of Suffolk.

Another patent, dated the 9th day of December, 1686, was issued by Thomas Dongan, "Captain General, Governor in Chief and Vice Admiral of the Province of New York, and its dependences, under his Majesty, James ye Second, by the Grace of God, of England, Scotland, France and Ireland, King, defender of the faith," etc., confirming the former grant or patent of Richard Nicholls, and confirming the title of the proprietors, not only to that portion of the lands purchased by them of the native Indians that had theretofore been allotted and divided between them, but confirming, also, their title to all of such tract or tracts of land of the original Indian purchase that remained common and undivided, to wit, " and as for and concerning all and every such parcel or parcels, tract or tracts of lands remaining of the granted premises not yet taken up or appropriated to any particular person or persons, by virtue of the before recited deed or patent, to the use, benefit and behoof of such as have been purchasers thereof, and their heirs and assigns, forever, in proportion to their several and respective purchases thereof made as tenants in common," etc. (See Dongan Patent, recorded in the secretary's office, Liber No. 2, Book of Patents, begun 1686.)

The said purchasers or proprietors of the land so purchased of the native Indian proprietors, and allowed and confirmed by patents as aforesaid from the colonial governors, with their heirs and assigns, thereafter made various allotments and divisions between them of such common and undivided lands belonging to them, and used and enjoyed the same, not as public property belonging to the town of East Hampton, or as corporate property, but as property belonging to them individually, as tenants in common, in shares or rights ascertained according to the amount paid by or on behalf of each

purchaser. The said purchasers or proprietors paid the consideration for the original conveyance of said tract of land and for the patents, and also the quit-rent.

The said proprietors exercised jurisdiction and acts of ownership over such common lands from the date of purchase and confirmation by patent, and from time to time directed and authorized the sale, lease, exchange and use of different parcels of said lands.

The original trustees of the town were themselves of the original purchasers or proprietors. They occasionally acted for the proprietors, when authorized and directed so to do, by resolution of the proprietors at their meetings, with reference to the use of the common and undivided lands, and kept an account with the proprietors.

The term "thirteen acres of commonage" means one full share. The undivided lands were originally put into forty-seven shares or lots. Each lot or share consisted of "thirteen acres of commonage," not in actual size, but that was simply the unit of value. The proportion that each proprietor had in the first division or allotment of land was the basis for all future divisions, and determined the proportion of each proprietor for himself, his heirs or assigns, in all future divisions or allotments of the remaining common lands. These lands were not all divided or allotted at one division. There were many divisions. The proprietors met and determined, from time to time, how many acres of the still undivided land should be allotted, and then the allotment was made by committees or surveyors, or other agents of the proprietors, and each proprietor was allotted his share according to his original right or proportion. A few parcels or tracts of such common lands remained unallotted or undivided after the last allotment was made by the proprietors, their heirs and assigns.

The premises described in the complaint are a part of such common lands that have never been allotted or divided. Said land in question is wild, uncultivated, unimproved, and until recently uninclosed, and not until recently in the occupation of any particular person. The defendant, before the commencement of this action, took exclusive possession of, and has occupied, and still occupies, the same, to the exclusion of the plaintiff, under a claim of title from the trustees of the town. The plaintiff has demanded possession, which the defendant has refused.

*Edward M. Atkinson*, for the appellant.

*Henry C. Platt*, for the respondent.

BARNARD, P. J.:

The facts in this case are undisputed. Eaton & Hopkins bought a tract of land, in 1651, of the Indians. This tract is now the town of East Hampton. James, Duke of York, owned the entire island, by grant from King Charles, second. The governor-general, Nichols, under James, Duke of York, ratified the purchase. This patent recites that the town is in possession of "several freeholders and inhabitants," who have purchased the land, and confirms the purchase unto the purchasers to a justice of the peace and six others, named "as patentees for and in behalf of themselves and their associates, the freeholders and inhabitants of the said town, their heirs, successors and assigns."

By the same charter the "said patentees and their associates" were granted "all the privileges belonging to a town within the government." The patent or charter of Nicholls was given in 1666, and in 1686 Captain-General Dongan, under James, Duke of York, who had then become King of England, granted a charter to the same persons as were named in the Nicholls patent. This Dongan charter also recites that the patentees were acting "for and in behalf of themselves and their associates, the freeholders and inhabitants of the town of East Hampton." A board of trustees is created by the charter. This board included the patentees under the Nicholls charter, and adds others, and conveys all the lands of the town to the new board as "trustees of the freeholders and commonalty of the town of East Hampton and their successors." This grant was one to the freeholders and inhabitants of the town. It was to be in trust for the use of the inhabitants of the town. (*Trustees of East Hampton* v. *Kirk*, 68 N.Y., 459; S. C., 84 id., 216.)

Whatever use or possession was made by what are termed the proprietors from the charter, was entirely useless for any purpose. The allotments made in severalty rested on a sound basis of title. This was the grant from the crown to the town, and the town allotment to the individuals, who thereafter held in severalty. The unallotted lands continued to belong to the town, and the defendant's title thereto from the town is the only title.

The Montauk bill is an entirely different one. It had not been acquired by the town at the date of the Dongan charter, and the town was authorized to get a title. Subsequently, no doubt, one was obtained, and it had been used as private property for the purposes of pasturage for very many years. This was an allotment to individual uses, to all legal intents and purposes.

The judgment should, therefore, be reversed and a new trial granted, costs to abide event.

PRATT, J., concurred.

Judgment reversed and new trial granted, costs to abide event.