## CARRAHER v. MULLIGAN et al.

*(Supreme Court, General Term, Fourth Department. November, 1889.)*

1. CORPORATIONS—LIABILITY OF TRUSTEES—PAROL EVIDENCE.
   In an action against the trustees of a corporation to enforce their liability on notes of the corporation by reason of their failure to file and publish the annual report required by Laws N. Y. 1875, c. 510, (3 Rev. St., 8th Ed., p. 1907, § 12,) parol evidence is admissible to show that the notes were given pursuant to an oral agreement between plaintiff, who, with defendants, owned the entire stock of the corporation, and defendants, that each should advance money for the benefit of the corporation to the amount of his stock, and wait for payment out of the profits of the business, as, such agreement having been executed, the enforcement of plaintiff's notes as against defendants under the statute, would be inequitable.

2. SAME—ESTOPPEL—PROVINCE OF JURY.

Where there is evidence that at the time of the agreement the matter of filing reports was discussed, and all agreed that it was not necessary; that the company stopped business shortly afterwards, and never resumed; and nothing on the subject is shown to have occurred afterwards between the parties,—it is error to direct a verdict for plaintiff on the ground of defendants' subsequent failure to file the statutory reports, as, if this failure was caused by an understanding with plaintiff, he is estopped, and whether there was such an understanding is a question for the jury.

3. PROVINCE OF JURY—EXCEPTIONS.

An objection to the court's directing a verdict is available under a general exception, and a particular request to send the case to the jury is not necessary.

Appeal from circuit court, Oneida county.

Action by Patrick Carraher against Miles Mulligan, James Merriman, and Patrick H. Carney, to enforce the liability of defendants, as trustees of a manufacturing corporation, for the payment of its debts, by reason of their failure to file and publish the annual report required by the statute,—section 12, c. 40, of 1848, as amended by chapter 510 of 1875, (3 Rev. St., 8th Ed., p. 1957, § 12,)—which imposes a liability on the trustees for the corporation's debts, on their failure to file and publish such report. In the complaint it is alleged that on September 6, 1881, defendants duly executed and acknowledged a certificate for the formation of a corporation, under the act of February 17, 1848, (chapter 40 of 1848,) and the acts amendatory thereof, for the purpose of carrying on and conducting at Utica, N. Y., the manufacture of buttons, the name of the company to be, "Globe Button Company, of Utica, N. Y.," the capital stock to be $8,000, divided into shares of $50 each, the number of trustees to be three, and to be for the first year the defendants; that such certificate was duly filed September 10, 1881, and thereby defendants and their successors became, and ever since have been and still are, a corporation by the name stated, and defendants all the time have been such trustees, and have conducted the affairs of the corporation; that in March, 1882, the capital stock was increased to $16,000; that the company did not, within 20 days from the 1st day of January, in either of the years 1884, 1885, or 1886. or at any time since it was organized, make or publish a report as required by section 12 of the said act; that on January 15, 1883, plaintiff lent to the corporation $2,000, taking therefor its two promissory notes of that date of $1,000 each, payable three years after date to plaintiff or order, with interest; that no part of said notes has been paid, and defendants are liable therefor. Defendants admitted the execution and delivery of the notes, but denied their indebtedness to plaintiff. They made no other specific denials, but alleged as a defense that prior to the date of the notes the company was largely in debt; that plaintiff had subscribed largely for the stock of the company, was informed of its condition, advised as to its management, and was deeply interested in its future; that he and defendants, being desirous to relieve the company from its financial difficulties, agreed between themselves, shortly prior to the date of the notes, to advance certain moneys to the corporation, to be applied to the payment of its debts, on the condition and agreement that the moneys so advanced should only be paid back to the person so advancing the same in the event that the company should thereafter have money or profits arising from its business or property sufficient to pay such advances; that in pursuance of such agreement plaintiff advanced $2,000, defendant Merriman the same amount, and defendants Mulligan and Carney, each $1,000, and notes for the amount so advanced were issued to each, the notes set forth in the complaint being the ones so issued to plaintiff, and being made on the condition and agreement stated; that since the making of such agreement the company has made no profits, and has had no money or property applicable to the payment of the notes, and it is utterly insolvent. As a further defense, it was alleged that plaintiff was one of the originators of the corporation, and agreed to and did take 40 shares of the original stock; that after the incorporation he was

constantly advising with the defendants, who were the only trustees, as to the management of its affairs, and was thoroughly acquainted with its financial condition; that at or about the date of the notes referred to, and while in consultation with defendants about the management, plaintiff well knew the financial condition of the company, and was opposed to the publication or making by the trustees of the reports required by the statute, and referred to in the complaint, and advised and urged them not to publish said reports, representing that it would be injurious to the company and its stockholders; that defendants thereupon, influenced by such advice, opposition, and representation, were deterred from making or publishing said reports as they otherwise would have done, and the plaintiff, by reason thereof, should be estopped from maintaining this action. At the trial, evidence was taken upon the issues, and at its close counsel for plaintiff asked the court to direct a verdict for plaintiff for the amount of the notes and interest, upon the ground that the evidence did not establish a defense in law; that there was no question of fact for the jury to pass upon; that the evidence given as to the terms of payment of the notes was in violation of the principle that contemporaneous parol stipulations, contradicting or varying the effect of a written instrument, cannot be received in evidence. Counsel for defendants objected to such direction. The court ordered a verdict for plaintiff for the amount of the notes and interest, and defendants excepted. From a judgment entered on the verdict defendants appeal.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Beardsley & Beardsley*, for appellants.  *S. J. Barrows*, for respondent.

MERWIN, J.  No request was made by defendants to submit the case to the jury; and it is now claimed that by reason thereof the objection cannot now be taken that there were questions of fact that should have been submitted. The cases cited on the part of plaintiff to this point do not apply to this case. On the other hand, the case of *Trustees* v. *Kirk*, 68 N. Y. 464, is authority for the proposition, as applicable to this case, that if it was error to take the case from the jury the objection is available under the general exception, and a particular request to the court to send the case to the jury was not necessary. The defendants had done nothing to waive their right, if they had one, to go to the jury. The same rule was substantially held in *Bank* v. *Dana*, 79 N. Y. 108.

The question, then, is, was the verdict properly directed for the plaintiff? The evidence tended to show an agreement between the plaintiff and the defendants, substantially as alleged in the first portion of the answer. The plaintiff was a subscriber to the original articles to the amount of $2,000 of the stock. The scrip was issued to other parties; but he was interested and active in the management, advising and assisting the defendants, who in name were the trustees. The business was not prosperous. The company was in debt, and apparently could not borrow on the credit of the company. The defendants and the plaintiff owned or controlled the whole stock. The proposition was then made for each to advance to the amount of stock they held or represented, and wait until the profits from the sales of the product of the factory would pay it back. This they all assented to. The giving of notes was discussed. The plaintiff said he wanted something to show how much money he put in. This idea was adopted, and notes of the company, in the ordinary form, were thereupon given to each for their respective advances. There was no writing, except the notes. It is urged by the plaintiff that the parol arrangement as to the manner or condition of payment varies the legal effect of the notes, and is therefore not available to the defendants. It may be that as against the corporation the condition as to the manner of payment would not be admissible. That, however, is not exactly the question here. It is competent to prove by parol the relation of the parties, and any extrinsic

facts affecting the equities. *Wells* v. *Miller*, 66 N. Y. 255. If the original agreement was verbal and entire, and only part reduced to writing, the whole may be shown. *Chapin* v. *Dobson*, 78 N. Y. 74. And in *Juilliard* v. *Chaffee*, 92 N. Y. 535, it is said, generally, that any agreement may be shown that makes the enforcement of the instrument inequitable. The point here is whether there was any arrangement, not between the plaintiff and the corporation, but between the plaintiff and these defendants, that should preclude the plaintiff from taking the benefit of the statutory provision in favor of creditors. The giving of the notes to plaintiff was but one part of the transaction. The defendants also advanced money and received similar notes, none of which have been paid. Both parties advanced their money and received notes in pursuance of an agreement, verbal it is true, by which each agreed with the other, upon certain limitation, as to the enforcement against the corporation. It was competent for these parties to make such an arrangement; and, it having been executed, the defendants presumptively having advanced their money in consideration and upon the faith of such arrangement, the plaintiff cannot now repudiate it, though it was verbal. His debt or claim, as between him and defendants, is impressed with the character he agreed it should have. Its enforcement here would not be equitable. *Juilliard* v. *Chaffee*, 92 N. Y. 529, 535. There is room for saying upon the evidence that the advances were to be treated as so much additional capital,—an informal increase of stock.

But it may be said that plaintiff's cause of action is based on something that afterwards occurred, to-wit, the default of the defendants in regard to their report. The moneys raised through the advances of the several parties at the time of the giving of the notes were designed to be, and apparently were, sufficient to pay all the debts. The company, however, stopped business in April, 1883, and never resumed. It has been held that when the condition of a company is such that the end and object for which it was formed are destroyed, and there is neither an ability nor an intention on its part at any time to further prosecute its business, it is no longer required to make the report called for by the statute. *Kirkland* v. *Kille*, 99 N. Y. 395. If, as it may from the evidence be found, the defendants, knowing that the debts were provided for, and that the claim of plaintiff, as well as their own, was not, under the arrangement, a debt of the corporation, and, in reliance on this agreement, concluded there was no necessity for making the statutory report, such default would be one that the plaintiff could not equitably take advantage of. Besides, the matter of filing reports seems to have been discussed at the time of the arrangement about advances, and, as it might be found, it was concluded by all that it was not necessary, and that it need not be done. There is evidence that all understood the requirements of the law; that defendants were ready to perform them; that plaintiff discountenanced it, upon the idea that, as all the debts were to be paid by the money they were raising, it was not important, and there was no need to publish a report. One witness testifies that plaintiff said: "No reports are needed to be published; no need to publish a report." Another witness testifies that the plaintiff, speaking of a report then present, said: "What is the use of having this published? It would be of no use to anybody. We are going to raise money to pay our debts, and it would not make a very good appearance for the company,"— and the witness added that what plaintiff said was the rule. The secretary of the company testified that it was stated there, and agreed, that he was not to publish a notice. These conversations or understanding had more particular reference, no doubt, to what should be then done in January, 1883. Still, they were to some extent of a general character, and might well be deemed to have an important bearing on the future action of the trustees. It is not shown that anything afterwards occurred between the parties on this subject. If the defendants omitted in 1883 and the subsequent years to publish the

statutory report by reason of the understanding between the plaintiff and the defendants that it should not be done, then the plaintiff would be estopped from taking advantage of such omission. He cannot claim what is deemed a penalty against the defendants for their not doing what he agreed expressly or by implication that they need not do. Whether upon the evidence there was such an understanding or agreement was a question of fact, for the jury. The foregoing considerations lead to the conclusion that judgment should not have been directed for plaintiff. Judgment reversed on the exceptions, and a new trial ordered; costs to abide the event. All concur.