# WALKER v. PHŒNIX INS. CO.    333

Judgment reversed, new trial ordered, costs to appellant to abide event.

---

Stillman R. Walker and Patrick Bresnan, Appellants, v. The Phœnix Insurance Company of Hartford, Conn., Respondent.

89 333
8ap360
89 333
156a 628

*Insurance policy — what does not constitute a waiver of its provisions.*

In an action brought to recover damages caused by fire alleged to be payable under a policy of fire insurance, it appeared that a policy of insurance was issued by the defendant to the firm of Saunderson & Starkweather and that the plaintiffs were the owners of two mortgages upon personal property owned by said firm, both of which mortgages contained a covenant to keep the property insured in an amount to be approved by the mortgagees and to assign said policy to them.

The policy so issued to Saunderson & Starkweather contained the following provisions:.

1st. "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership * * * or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage."

2d. "If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee, or if any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto. * * * "

3d. "This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for. * * * "

4th. "This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached. * * * "

It further appeared that when the contract of insurance was entered into the defendant did not know of the existence of the chattel mortgages, nor did it know that any persons other than the insured were interested in the property covered by the policy.

The property was destroyed by fire, and on the next day, after the defendant had learned of the fire, one of the brokers who procured the policy took it to defendant's office and asked its application clerk to correct a clerical error in spelling the name of Starkweather, and also to attach to the policy a provision making the loss payable to the mortgagees. The application clerk corrected the error in the name, but declined to add the provision making the loss payable to the mortgagees.

The broker testified that the clerk said that the absence of the mortgagee provision would make no difference as the loss would be settled with Saunderson & Starkweather, and a check paid to their order. The application clerk denied saying that a check would be given for the loss. Subsequently the defendant's adjuster visited the scene of the fire and saw one of the firm of Saunderson & Starkweather and directed him to make out an itemized statement of their loss, which was done and delivered to such adjuster. Two or three days thereafter

the amount of loss was submitted to the arbitration of two appraisers, one selected by the insured and the other by the insurer. Subsequently Saunderson & Starkweather assigned all their interest in the right of action on the policy to the plaintiffs, the mortgagees.

*Held,* that a verdict directed by the court in favor of the defendant was proper; that the application clerk had no power to waive orally, after the fire, any one of the provisions of the policy;

That, under the first provision of the policy, the policy never took effect, and that, under the second provision of the policy, in case the mortgagees' interests were to be protected therein, their interests must have been specified in it in a printed or written provision attached to it;

That the failure to disclose to the defendant the fact that the insured were not the unconditional and sole owners of the property, and the absence of a provision protecting the interests of the mortgagees, were not waived by the defendant's having entered upon an appraisal, and having fixed thereby the amount of the damages;

That the correction, after the fire, of the spelling in the policy of the name "Starkweather" by the application clerk, he being at the time informed of the existence of the mortgages, was not a reissue of the policy or a waiver of the first provision thereof.

APPEAL by the plaintiffs, Stillman R. Walker and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 20th day of December, 1893, upon the verdict of a jury rendered by direction of the court after a trial at the New York Circuit.

*George W. Stephens,* for the appellants

*John S. Wise,* for the respondent.

FOLLETT, J.:

This action was begun February 24, 1891, to recover damages alleged to be due under a policy of fire insurance issued by the defendant.

The plaintiffs are partners under the firm name of Walker & Bresnan. In November, 1889, William S. Saunderson and Charles G. Adams were partners under the firm name of William S. Saunderson & Co., engaged in business on Water street at the city of New York. November 23, 1889, William S. Saunderson & Co. mortgaged to Walker & Bresnan a quantity of printing materials and machinery to secure the payment of $676.92, and, January 27, 1890, they also mortgaged to Walker & Bresnan printing materials

and machinery to secure the payment of $654.98.   Both mortgages contained a covenant by the mortgagors to keep the property insured in an amount to be approved by the mortgagees and to assign the said policy to them.   On the 11th of November, 1890, Charles G. Adams sold his interest in the firm of William S. Saunderson & Co. to James A. Starkweather, and thereupon the firm became Saunderson & Starkweather.   November 11, 1890, the defendant by its policy of insurance — a New York standard policy — insured Saunderson & Starkweather for one year from November 11, 1890, at noon, to November 11, 1891, at noon, against loss or damage by fire "to an amount not exceeding one thousand dollars."   The policy contained the following provisions :

(1) " This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void    *    *    *    if the interest of the insured be other than unconditional and sole ownership,    *    *    *    or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage.    *    *    * "

(2) " If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee, or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto.    *    *    * "

(3) " This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for.    *    *    * "

(4) " This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy, except such as, by the terms of this policy, may be the subject of agreement indorsed hereon or added hereto ; and as to such provisions and conditions no officer, agent or representative shall have such power, or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached

hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.   *   *   *"

The witnesses all agreed that when the contract of insurance was entered into the defendant did not know of the existence of the chattel mortgages, nor did it know that any persons, other than the insured, were interested in the property covered by the policy.

November 12, 1890, the property was destroyed by fire, and on the next day, after the defendant had learned of the fire, one of the brokers who procured the policy took it to defendant's office and asked its application clerk to correct a clerical error in spelling the name of Starkweather, and also to attach to the policy a provision making the loss payable to the mortgagees. The application clerk corrected the error in the name, but declined to add the provision making the loss payable to the mortgagees. Thus far these witnesses agree. The broker testified that the clerk said: "He (the clerk) said it (the absence of the mortgagees' provision) would make no difference, as the loss would be settled with Saunderson & Starkweather and a check paid to their order." The application clerk denied saying that a check would be given for the loss. The broker testified that this interview was on the morning of the thirteenth, but the clerk testified that it occurred in the evening of that day. This is substantially all the conflict there is in the evidence. On November thirteenth, defendant's adjuster visited the scene of the fire, saw one of the firm of Saunderson & Starkweather and directed him to make out an itemized statement of their loss, which they did, and on November eighteenth, delivered the statement to defendant's adjuster. Two or three days thereafter the amount of the loss was submitted to the arbitrament of two appraisers, one selected by the insured and the other by the insurer. The amount of the loss was fixed at $1,505.17, and the portion payable by the defendant, if liable, at $950. During the appraisal the existence of the chattel mortgages became known to defendant's adjuster, who reported the fact to the general manager of the defendant's office in New York. The general manager testified that he did not know of the mortgages until after the appraisal. December 8, 1890, the premium due on the policy was tendered by the broker who procured it, to the defendant, but it was refused.

December 2, 1890, Saunderson & Starkweather assigned all their interest in and right of action on the policy to the mortgagees, the plaintiffs. It was agreed on the trial that if the plaintiffs were entitled to recover, their damages were $950, with interest from January 28, 1891.

At the close of the evidence the defendant moved that a verdict be directed in its favor, which was granted, and an exception taken. The plaintiffs did not request that any issue of fact be submitted to the jury, or that a verdict be directed in their favor, but their exception is sufficient to raise the question whether any issue of fact should have been submitted to the jury. (*Train* v. *Holland Purchase Ins. Co.*, 62 N. Y. 598; *Clemence* v. *City of Auburn*, 66 id. 334; *Trustees of East Hampton* v. *Kirk*, 68 id. 459.)

There was no conflict in the evidence except in respect to the hour when the conversation occurred between the broker and the application clerk, and whether the latter said that the absence of the mortgagees' provision would make no difference and that the loss would be paid to the insured by check. The hour when the conversation took place is not material, and the application clerk had no power to waive, orally, after the loss, any one of the provisions of the policy. This is expressly provided for in the provision lastly above quoted from the policy. There was no issue of fact for the jury, and the sole remaining question is, should a verdict have been directed for the plaintiffs?

Under the provision first above quoted from the policy it is clear that the policy never took effect, and by the provision secondly above quoted it is made plain that, in case a mortgagee's interest is to be protected under a standard policy, his interest must be specified in it or in a printed or written provision attached to it. There is no such provision, and it is conceded that the defendant had no knowledge of the existence of the mortgagees' interest until after the fire.

It is urged in behalf of the plaintiffs that the failure to disclose to the defendant the fact that the insured were not the unconditional and sole owners of the property, and the absence of a provision protecting the interests of the mortgagees, were waived by the defendant having entered upon an appraisal and thereby fixed the amount of damages. The answer to this is that, by the provision

thirdly above quoted from the policy, it is expressly provided that the prosecution of an examination in respect to the fire, or entering into an appraisal to ascertain the damages, shall not waive any provision or condition of the policy or any forfeiture thereof.

*Kiernan* v. *The Dutchess County Mutual Ins. Co.* (80 Hun, 602; S. C., 61 N. Y. St. Repr. 720; 29 N. Y. Supp. 1126) is cited as an authority for the plaintiffs' contention, that the defense that the policy was void because of the undisclosed existence of the two chattel mortgages, was waived by the defendant's inquiry into the circumstances of the fire and thereafter uniting in an appraisal to determine the amount of damages. The case cited is meagerly reported. It does not appear whether the chattel mortgage was given before or after the insurance was effected, nor does it appear whether the policy was a New York standard policy, containing a condition that an appraisal of the damages should not be deemed a waiver of any provision or condition of the policy. This case cannot be accepted as of sufficient authority to authorize this court to disregard the plain conditions of this policy. It is urged that the correction, after the fire, of the spelling in the policy of the name of Starkweather by the application clerk, he being at the time apprised of the existence of the mortgages, was in effect a reissue of the policy and a waiver of the provision first above quoted. This contention cannot be sustained. The interview between the broker and the application clerk must be considered as an entirety. The clerk expressly refused to waive the condition by declining to attach a provision in favor of the mortgagees, and, besides, as before stated, he was without power to waive orally, after the fire, any of the conditions of the policy.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.