DAVID J. TYSEN and Others, Appellants, *v.* CEDAR GROVE
BEACH CORPORATION, Respondent.

Second Department, May 6, 1921.

**Deeds — conveyance to low-water mark of navigable water with
reservation of fishery with right to use beach — reservation
construed not to give right in upland.**

A reservation in a deed which purported to grant lands to low-water mark
in the county of Richmond, of " the fishery and the right to use the beach
in front of said premises for all fishing purposes," construed not to give
to the grantor or his successors in title any rights in the upland above
high-water mark.

The word " fishery " cannot be construed as giving any right in the upland.

APPEAL by the plaintiffs, David J. Tysen and others, from so much of a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Richmond on the 4th day of December, 1919, on the decision of the court rendered after a trial at the Richmond Special Term, as limits their right of fishery and the use of the beach in front of the premises of the defendant, for all fishing purposes, to the land below high-water mark.

On the 28th of June, 1847, one Tysen, ancestor of the plaintiffs, conveyed to Harriet Lord, predecessor in title of the defendant, a plot of ground in Richmond county bounded upon the south side by low-water mark on the bay of New York, reserving, however, to the said Tysen, his heirs and assigns, to his and their own use forever, " the fishery and the right to use the beach in front of said premises for all fishing purposes." All of the deeds in the defendant's chain of title, down to and including the year 1913, contained the same reservation. In that year the defendant became the owner of a portion of such water front property, the remainder having been previously conveyed to a third party to whom the plaintiffs, for a consideration, released their asserted fishery right in the parcel so conveyed. The premises conveyed to the defendant are inclosed with a fence, and there are erected thereon a number of bungalows above high-water mark, occupied by tenants, who have the right to remove them at the expiration of the tenancy. The plaintiffs, claiming that they were entitled to the right of fishery and to the use of the beach, brought this action in equity against the defendant to have such rights ascertained, and to compel the defendant to account for the rents and profits of the fishery, to oust the defendant from possession of the fishery and from the beach in front of the premises, to restore the plaintiffs to possession of the same, to remove all structures and other impediments obstructing the plaintiffs in the enjoyment of their rights, and for other relief.

The defendant answered, setting up the affirmative defense of abandonment by the plaintiffs and of adverse possession by the defendant. The case came on for trial at Special Term, and a decision was rendered that the plaintiffs were entitled to a reasonable and adequate right of way from one of the

public highways of the city to high-water mark over the land of the defendant for the purpose of the enjoyment of the fishery, and adjudging that the plaintiffs were the owners of the fishery and had the right to use the land *below high-water mark* in front of the defendant's premises for all fishing purposes.

*Howard R. Bayne,* for the appellants.

*John G. Clark,* for the respondent.

KELLY, J.:

It will be noted that the decision of the court limits the plaintiffs' right to use the land to the part below high-water mark. The contention of the plaintiffs is that the reservation in the deeds gave them the right to use, for all fishing purposes, any portion of the sandy waste lying above high-water mark, which they say might be denominated a beach; that the bungalows interfered with this right; and that, therefore, the judgment did not give to them the full measure of relief to which they are entitled.

It appears on the record that these fishery rights asserted by the plaintiffs have not been used for about seventy years. The learned justice at Special Term, however, found against the defense of abandonment and adverse possession; and as the defendant has not appealed, these questions are not before us on this record.

It is provided in the Conservation Law (§ 329, as added by Laws of 1912, chap. 318, and amd. by Laws of 1913, chap. 54): " Fish, except shad, in Raritan bay or waters adjacent thereto in Richmond county shall not be taken except by angling. Shad shall not be taken except by pounds or drifting shad nets from March fifteenth to June fifteenth, both inclusive." It, therefore, appears that this reserved right of fishery and use of the beach for fishing purposes is of little or no value to the plaintiffs except for the purpose of selling the same to the defendant; whatever it was, it has not been used or asserted for more than seventy years, and the prohibitory statutes and changed conditions in the locality make the alleged right of no practical use to any one. As a rule courts of equity do not enforce such shadowy and unsubstantial

rights, leaving the parties to their remedy at law. But the judgment in this case adjudicates that they exist but limits them to the beach in front of the defendant's upland and grants the plaintiffs a right of way over defendant's land to reach the beach for the purpose of enjoyment of the rights so adjudicated. The defendant does not appeal, but the plaintiffs are not satisfied, contending that they have rights in defendant's upland above high-water mark.

The language of the reservation in the deed of 1847 gives the plaintiffs no right in the upland. Some confusion has been introduced in the record by the use of the words " sand waste," " sand dunes," " sandy beach," which are not found in the reservation in the deed. When Tysen, the grantor, in 1847 conveyed the premises to Lord, defendant's predecessor in title, he conveyed not only the upland owned by him, but he assumed to convey the land between high and low-water mark, the " beach " in the ordinary and legal interpretation of the word. (*Trustees of East Hampton* v. *Kirk*, 68 N. Y. 459.) His deed describes the property by metes and bounds, the line running to the water extends " to ordinary low water mark; thence along the Beach  *  *  *  to the northerly side of a ditch," etc. Tysen had no title to the beach between high and low-water mark; that constituted the foreshore. But he assumed to convey it, and his grantee in 1847 might assert that as to her his right to use the foreshore was gone. If he landed upon it or deposited his nets or boats on the foreshore she might assert that he had conveyed that right to her. Therefore, he reserves to himself, his heirs and assigns, " the fishery and the right to use the beach in front of said premises for all fishing purposes." He did not reserve any upland or right in the upland. If he had a fishing hut on some part of the upland, the location of which is extremely indefinite and which disappeared half a century ago, he did not reserve it in the conveyance. Nor did he reserve " sand dunes," or " beach," or " sandy waste; " he reserved the right to use the " beach in front of said premises " which he had assumed to convey — the land between high and low-water mark. I think this is the plain meaning of the reservation. Tysen and his successors in title, including the plaintiff, have acquiesced in this inter-

pretation for more than fifty years. Tysen desired to keep the right to land on the beach *in front* of the premises conveyed. It may be that he had that right as one of the public, but he had assumed to convey it. To extend this reservation so as to include the upland, or any part thereof, is to do violence to the plain language of the deed. He reserved " the fishery and the right to use the beach in front of said premises." The word " fishery " cannot be construed as a right or easement in the upland. He had the same right of fishery as all other citizens, but he had conveyed his right to use this piece of beach in connection with his right to fish or catch fish. If in 1847, as found by the learned justice at Special Term, there were " sand dunes " or a hut on the " sand dunes," or if Tysen was accustomed to spread his nets on the " sand dunes," such dunes were a part of the upland conveyed and the grantor did not attempt to reserve any right to the hut or to intrude upon any part of the upland.

As matter of fact the evidence shows that the present beach or foreshore is not the beach or foreshore of 1847. That particular strip is now some distance out in the bay covered by water owing to the gradual shifting of the high-water line caused by erosion. Coupled with the fact that this reserved right to use the beach in connection with the fishery has not been used for more than fifty years, the washing away of the original *locus in quo* by erosion would seem to make the alleged easement or rights to the beach reserved in the deed of 1847 very doubtful and shadowy, but in any event the plaintiffs have failed to establish any right in the upland. (*Mulry* v. *Norton,* 100 N. Y. 424; *Silver* v. *Woodbury,* 185 App. Div. 937; affd., as modified, 230 N. Y. 627.)

The judgment should be affirmed, with costs.

Present — Blackmar, P. J., Mills, Rich, Kelly and Jaycox, JJ.

Judgment unanimously affirmed, with costs.